[Civ. No. 2596. Third Appellate District.—July 23, 1923.]

AMERICAN SURETY COMPANY OF NEW YORK (a Corporation), Respondent, v. BANK OF ITALY (a Corporation), Appellant.

[1] BANKS AND BANKING—LIEN OF BANKER—RIGHT OF APPROPRIATION—TRUST FUNDS—NOTICE.—A banker has a lien upon and so is vested with the right to appropriate any money or property in his possession belonging to a customer to the extinguishment of any matured indebtedness of such customer to the bank to the full extent of the money or property so possessed, if necessary, and so far as it may go toward such extinguishment, provided, of course, that such property or money so deposited has not been charged, with the knowledge of the bank, with the subservience of a special burden or purpose, or does not constitute a trust fund, of which the banker had notice.

[2] ID.—EQUITIES OF BENEFICIAL OWNER—NOTICE.—A banker's lien ordinarily attaches in favor of the bank upon the securities and funds of a customer deposited in the usual course of business, for advances supposed to have been made upon their credit, not only against the depositor, but against the unknown equities of all others in interest, unless modified or waived by some agreement, express or implied, or conduct inconsistent with its assertion; but no such lien will prevail as against the equity of a beneficial owner of which the bank had notice, either actual or constructive.

[3] ID.—ACCOUNT OF BUILDING CONTRACTOR—SPECIAL DEPOSIT.—An account of a building contractor with a bank, consisting of moneys received from the owner of a garage under construction for use in paying the claims of laborers and materialmen and which moneys are deposited in the bank, in a checking account, in the name of the contractor, followed by the name of the garage, i. e., "Ernest Green, Silva Garage," is not, technically speaking,

1. Lien or set-off of bank against deposit for debt due it by depositor, notes, 2 Ann. Cas. 206; 19 Ann. Cas. 487; for debt not yet due, notes, Ann. Cas. 1915A, 688; Ann. Cas. 1917C, 1205.

Applicability of deposits to indebtedness of one depositing in his own name the funds of another, where the bank has no actual notice of the true character of the funds, notes, 13 A. L. R. 324; L. R. A. 1915A, 715.

3. Special deposit as distinguished from general deposit, notes, Ann. Cas. 1913E, 45; Ann. Cas. 1918B, 390; 39 L. R. A. (N. S.) 847; L. R. A. 1918A, 65.

a special deposit, which is said to be created when the whole contract is that the thing deposited shall be safely kept and the identical thing returned to the depositor.

[4] ID. — SOURCE OF DEPOSITOR'S MONEY — DUTIES OF BANKER — INSTRUCTIONS.—A banker is not required to go "snooping" about to learn from what source his depositors obtain the moneys which they deposit in his bank; and his duties as a depositary of moneys are fulfilled if he keeps and handles the moneys deposited with him according to the requirements of the depositor or the conditions upon which the deposit is made, and these requirements or conditions, if they impose something beyond his usual or ordinary obligations in the matter of the handling of deposits of money, must be brought home to him by instructions by the depositor or an agreement between him and the depositor so clear or so unambiguous and unequivocal as to leave no room for a reasonable doubt as to their meaning and scope.

[5] ID.—EARMARKING OF ACCOUNT—ABSENCE OF AGREEMENT OR INSTRUCTIONS—GENERAL DEPOSIT.—A depositor may establish an account in a bank under a special designation or earmarked as a particular account, and yet, in the absence of an agreement with or instructions to the banker that the account so earmarked is a special deposit or is to be used for a specific purpose, the moneys deposited therein are to be regarded as belonging to the general account of the depositor and may be so treated by the bank.

[6] ID.—CONSTRUCTON OF BUILDING—PAYMENTS BY OWNER—DEPOSITS UNDER SPECIAL DESIGNATION—CHARACTER OF DEPOSIT—NOTICE.— An account of a building contractor with a bank, consisting of moneys received from the owner of a garage under construction for use in paying the claims of laborers and materialmen and which moneys are deposited in the bank, in a checking account, in the name of the contractor, followed by the name of the garage, i. e., "Ernest Green, Silva Garage," in the absence of any understanding between the bank and such contractor or any direction by the latter to the bank that the account was opened and the moneys therein deposited to be appropriated to a special purpose, constitutes a general deposit of such contractor, even though the bank knows or has reason to believe that the funds so deposited are to be devoted to the payment of the claims of materialmen, mechanics, and laborers furnishing material for and performing labor on the garage in question.

[7] ID.—PAYMENTS TO BUILDING CONTRACTOR—TRUST FUNDS.—Moneys received by a building contractor as payments under a building contract made in pursuance of the provisions of the mechanic's lien law do not, as a matter of law, constitute trust funds in the hands of the contractor and by him, or by the bank in which he

deposits them as a general deposit, held for the benefit and use, *pro tanto*, or so much thereof as might be found necessary to satisfy their claims, of those furnishing the materials used in and the labor required to construct the building.

APPEAL from a judgment of the Superior Court of Stanislaus County. J. C. Needham, Judge. Reversed.

The facts are stated in the opinion of the court.

Louis Ferrari and Richard Fitzpatrick for Appellant.

Dennett & Zion for Respondent.

HART, J.—This action was commenced by the plaintiff to recover from the defendant bank the sum of $4,000, which had been deposited with and in said bank by one Ernest Green, and which, it is alleged, was deposited as a trust fund for a special purpose and which, it is further alleged, was wrongfully, or without authority from said Green, appropriated by the defendant to the extinguishment of a personal indebtedness due it from Green.

The plaintiff was given judgment in the sum of $3,024.81, and from said judgment the defendant appeals.

The defendant moved for a new trial and also moved that the judgment be vacated and in lieu thereof judgment upon the findings be entered in its favor. The first-mentioned motion was made upon the ground that the evidence was insufficient to justify and support the findings, and the latter motion upon the ground that the conclusions of law "are erroneous, not consistent with, and not supported by, the findings." Both motions were denied.

The case was tried upon an agreed statement of facts, except as to the question whether the defendant had knowledge, at the time the money sued for was appropriated as above indicated, of the alleged "trust character" of said deposit, and as to this question, oral testimony was taken.

The court's findings of fact follow the facts as stipulated by the parties, there being added, however, a finding based upon the testimony of a witness as to the knowledge of the defendant as to the character of the deposit in dispute.

The facts as agreed upon by the parties, and which, it was stipulated, might, as far as they go, stand as the findings of the court, are as follows:

"II.   That on the nineteenth day of November, 1919, Ernest Green entered into a contract with C. M. Maze, W. C. Shackelford, and W. J. Silva for the construction of a certain garage known as Silva Garage, in Modesto, California. The contract was in the usual form and contained the stipulations usual in building contracts.   III.   That at the said time the plaintiffs above named, the American Surety Company of New York, became the surety of Green for the faithful performance of said contract as alleged in the complaint of the plaintiff, and executed and delivered a bond and undertaking in the usual form for the payment of laborers, mechanics, materialmen, and for the faithful performance of the contract, a copy of which is attached to the complaint on file herein, which said bond and contract were duly filed in the office of the County Recorder of the County of Stanislaus, in which county the property upon which the work was to be done is situated, within the time and in the manner required by law.   IV.   That at said time, Ernest Green had an account with the Bank of Italy, Modesto Branch, in the name of Ernest Green, and about the time of the execution of the contract, he opened a new and additional account with the Bank of Italy and received a book showing such deposits from the Bank of Italy, marked by the officials thereof, 'Bank of Italy, Modesto Branch, Modesto, California, in account with Ernest Green, Silva Garage.'   V.   That from the time of the entering into the contract aforesaid with C. M. Maze, W. C. Shackelford and W. J. Silva, Ernest Green from time to time deposited in the Bank of Italy in said account marked 'Ernest Green, Silva Garage' certain money.   VI.   That said Green proceeded under said contract with the construction of said work until some time in February, 1920, at which time he was unable to proceed with the work.   At said time upon the demand of the owners of the building, the said plaintiff above named, the American Surety Company, in accordance with the provisions in their said bond, paid to the owners of the said building, to wit: Maze, Shackelford, and Silva, the sum necessary for the payment of the demands of laborers and mechanics and materialmen and to complete the said building, which sum was in excess of fourteen thousand dollars, and the plaintiff was legally liable under its bond as surety for the payment of said amount and was compelled to pay the same under

the stipulations of said bond, and that it paid of said amount an amount in excess of five thousand dollars to pay the claims already accrued of laborers, mechanics and materialmen for work, labor and materials actually furnished for and used in the construction of the said Silva Garage, which said amount was due on or became due before the eleventh day of February, 1920, and was not paid on said day but remained due and unpaid and plaintiff paid in full all such claims for labor and material. VII. That on the eleventh day of February, 1920, Ernest Green had on deposit with the Bank of Italy, Modesto Branch, in the account of Ernest Green, Silva Garage, the sum of $3,024.81. VIII. That on the eleventh day of February, 1920, the said Bank of Italy, Modesto Branch, without any order authorizing, or authority from Ernest Green or from the owners of said building, Maze, Shackelford or Silva, or from this plaintiff, transferred from said account of Ernest Green, Silva Garage, the sum of $3,024.81. That said transfer was made from the funds deposited by Green in said account of Ernest Green, Silva Garage, and while Green was indebted in a sum in excess of $3,024.81 for work and labor, services and material actually furnished to and used upon and in the construction of the said Silva Garage. IX. That said Ernest Green and the said Maze, Shackelford and Silva have assigned to the plaintiff herein and it has become subrogated to their rights and the rights of laborers and materialmen therein and to all of their rights to said money on deposit with the Bank of Italy in the account marked 'Ernest Green, Silva Garage' and more particularly to the aforesaid $3,024.81, and it is stipulated that if the defendant is not entitled to obtain the money, plaintiff is entitled thereto with interest from February 11th, 1920. X. That Ernest Green, said Maze, Shackelford and Silva, and the said plaintiff, subsequent to the transfer of said $3,024.81, demanded of the defendant that it return to the account of Ernest Green, Silva Garage, the aforesaid $3,024.81, and that the bank has refused to return said money to said account or to pay the same to Green, the plaintiff herein, or Maze, Shackelford and Silva, and claims that it is entitled to hold the said account and apply it upon the indebtedness owing to it by the said Green. That at the time of the said transfer of $3,024.81, on February 11th, 1920, Green was indebted

to the Bank of Italy in a sum in excess of that amount. That on the eleventh day of February, 1920, and for some time prior thereto, Ernest Green had five accounts in the Bank of Italy under the following names: 1. Ernest Green account. 2. Ernest Green, Milliken Bridge account. 3. Ernest Green, Kewin Garage account. 4. Ernest Green, Davis Garage account. 5. Ernest Green, account of son—I don't know the exact words, but it was his son's account. Mr. Dennett. Yes.''

Lyle Green, son of Ernest Green, above referred to, testifying for the plaintiff, stated that he was his father's bookkeeper, and was familiar with the contract for the construction of the Silva Garage and other building contracts of his father; that there was, at the time of the making of said contract, an account in said bank marked ''Ernest Green, Milliken bridge account,'' said account having been so marked on the suggestion of a Mr. Davis, an officer of said bank; that, immediately upon the execution of the contract for the erection of the Silva Garage, said Ernest Green opened an account in said bank and marked or designated the same as the ''Ernest Green, Silva Garage,'' and at that time, from his personal funds, deposited in said account the sum of $300; that, from time to time thereafter, as work on the Silva garage progressed and he received payments from the owners under the contract, said Ernest Green made deposits in the Silva garage account with the moneys so received. In connection with the examination of the witness, there was introduced in evidence a pass or deposit book which was issued by the defendant to Ernest Green, and upon which the following words were written: ''Bank of Italy, in account with Ernest Green—Silva Garage.'' This book showed that twelve deposits of money had been made in said account, which were made on as many different dates after the first deposit of $300 made therein by said Green out of his private funds. All these deposits, so the witness Green testified, were entirely of moneys received by Ernest Green as payments under the Silva garage contract. The witness, on cross-examination, testified that, while the defendant, from time to time, loaned his father money to be and which was appropriated to the uses of other accounts he had in the bank, no money was ever borrowed from the bank by his father for the Silva garage account, nor was any of the

money loaned or advanced by the bank to his father appropriated to the uses or purposes of said account.

There was also introduced in evidence a memorandum showing a check whereby the defendant, through its officers, transferred the sum of $4,000 from the Silva Garage account to the Milliken bridge account, said memorandum containing the statement that the latter account had been overdrawn to the extent of the sum of $4,000. As to this, though, it should be stated, counsel for plaintiff, in their brief, explain that, while said check called for a transfer of $4,000, the sum actually in the Silva garage account, at the time of said transfer, was the sum of $3,024.81, which is the sum for which the plaintiff was awarded judgment.

The above comprehends a statement of all the facts admitted and established at the trial and as found by the court.

The theory of the complaint, as well as that of the decision below and of the plaintiff on this appeal, is that the account in controversy involved or constituted a special deposit or a trust fund, and upon this it is contended that the defendant, having (it is claimed) knowledge at the time said account was opened that such was its character, was not at liberty to charge the account with an overdraft of Green on another or a general account opened and maintained by the latter with and in the defendant bank, in the absence of authority so to do from said Green; that there is no evidence showing or tending to show that Green ever authorized, either expressly or by acts or conduct, the bank to use or disburse any moneys deposited in said account for any other purpose than that for which it was "specially" deposited, to wit, the payment of claims of materialmen and laborers arising under the Silva garage building contract. On the other hand, the defendant contends that the evidence affords no justification whatever for the conclusion that the account constituted, or was intended by the parties to constitute, either a special deposit, or a deposit for a special purpose, or, upon any view of the circumstances of the transaction, as involving a trust fund; that, therefore, it must be assumed, and, indeed, presumed as a fact, that the deposit was made in the usual course of business, that it was general in character, that as to it, therefore, as is true of any general deposit in a bank, the relation of debtor and creditor

was established and existed between the bank and the depositor, and that, consequently, the account was subject to the operation of a banker's lien, which is expressly created and authorized by section 3054 of the Civil Code.

[1] It is settled law, and, indeed, as above indicated, it is expressly so provided by the law of this state (Civ. Code, sec. 3054, *supra*), that a banker has a lien upon and so is vested with the right to appropriate any money or property in his possession belonging to a customer to the extinguishment of any matured indebtedness of such customer to the bank to the full extent of the money or property so possessed, if necessary, and so far as it may go toward such extinguishment, provided, of course, that such property or money so deposited has not been charged, with the knowledge of the bank, with the subservience of a special burden or purpose, or does not constitute a trust fund, of which the banker had notice. [2] "A banker's lien ordinarily attaches in favor of the bank upon the securities and funds of a customer deposited in the usual course of business, for advances supposed to have been made upon their credit, not only against the depositor, but against the unknown equities of all others in interest, unless modified or waived by some agreement, express or implied, or conduct inconsistent with its assertion." (Footnotes to *Garrison* v. *Union Trust Co.*, 111 Am. St. Rep. 423, 424.) Of course, no such lien will prevail as against the equity of a beneficial owner of which the bank has notice, either actual or constructive. (*Central Nat. Bank* v. *Connecticut Mut. Life Ins. Co.*, 104 U. S. 54 [26 L. Ed. 693, see, also, Rose's U. S. Notes]; *Bank of New South Wales* v. *Goulburn Valley Butter Factory,* 71 L. J. P. C. 112, [1002] App. Cas. 543; *Arnold* v. *San Ramon Valley Bank,* 184 Cal. 632, 635 [13 A. L. R. 320, 194 Pac. 1012]; *Melander* v. *Western Nat. Bank,* 21 Cal. App. 462, 467 [132 Pac. 265], and cases therein cited.)

The court below, however, in its conclusions of law found that the deposit constituted "a special deposit, but that irrespective of the fact as to whether or not said deposit was a special deposit, the same was a trust fund, and earmarked under the instruction and with the knowledge and consent of the officials of the defendant, bank, with the trust character, and with knowledge that said money had been received from the Silva garage contract," etc. Much of the fore-

going "conclusion of law" is a finding of fact, but this is of no consequence in the decision of this case.

[3] The account, it is clear, is not technically a special deposit, which is by all the text-writers and the cases generally said to be created when "the whole contract is that the thing deposited shall be safely kept, and that identical thing returned to the depositor." (1 Morse on Banks and Banking, sec. 183; Magee on Banks and Banking, p. 290.) In such case, the bank becomes a bailee and holds the money or thing in trust for the depositor or the bailor. There is no evidence, nor, indeed, is it so claimed, that any such a contract was made by the defendant and Ernest Green. In fact, from the general theory of plaintiff's case, it is in effect conceded that the identical moneys deposited in said account were not to be returned to Green, but that they were to constitute an account upon which Green could draw his check in favor of materialmen, mechanics, and laborers furnishing materials and labor for the Silva garage, in satisfaction of their claims for such material and labor. But, as will be observed, the court found, as a matter of law, that, irrespective of whether the account involved a "special deposit," said account constituted a "trust fund." The plaintiff advances two different theories upon either one or both of which, it contends, that conclusion is to be upheld, to wit: 1. That the evidence shows that the moneys were deposited with the defendant upon an agreement between the latter and Ernest Green, or under specific instructions by Green to the defendant, and subject to which instructions the latter received the deposit, that they were to be used for or appropriated to a special purpose, to wit: the payment of the claims of the materialmen, mechanics and laborers, for materials furnished for, and used in, and labor performed on the Silva garage; 2. That the moneys received by Green on the contract price and deposited in said account, constituted, as a matter of law, a trust fund, which was to be held by him for the benefit of such materialmen, mechanics, and laborers, and that the defendant was charged with notice of the trust character of the moneys so deposited.

Such an agreement as the plaintiff claims the evidence shows was made between Green and the bank as to the account in dispute, while creating in a sense a trust relation between the bank and Green as to said account, would,

strictly, involve merely an agreement on the part of the bank to waive its right to appropriate the moneys deposited in the account as a setoff to any indebtedness of the depositor to it—that is, it would amount only to a waiver of its right of lien. But, be that as it may, no express agreement or understanding between the bank and Ernest Green that the moneys in question were to be used for or appropriated to the payment of the claims of such persons as furnished materials for use in the construction of the Silva garage and of mechanics and laborers who bestowed labor on said building is shown by the evidence. Nor is there any direct evidence that Green gave the bank instructions to the effect that the moneys deposited in said account were to be appropriated or applied to a special purpose. If, then, there was such agreement or direction to the bank by Green of the asserted special purpose of said account, it must be extracted from the circumstances under which the account was opened and made. And as to this, we are not reluctant to express the opinion that the evidence does not reasonably or fairly warrant any such implication. The only circumstances shown by the evidence from which an agreement or understanding between the bank and Green, or that instructions were given by Green to the bank at the time the account was opened, that the moneys deposited therein were to be appropriated to and disbursed by the defendant in the payment of the claims of the materialmen, mechanics, and laborers furnishing materials and labor in the construction of the Silva garage are that the said account was earmarked "Ernest Green, Silva Garage," and that said Green kept in the defendant bank a separate account of his own, one for his son with himself and one each for three other building contracts which, we infer from the evidence, were in course of execution at the time of the opening of the account in dispute. It is true that the court found that the account in question was marked or designated as indicated upon the suggestion of the officials of the defendant. But that finding derives no direct support from the evidence. There is testimony showing that the "Milliken bridge" account was so designated on the suggestion of an officer of the defendant, but there is no testimony, nor does such fact appear in the statement of the stipulated facts, that the "earmarking" of the account involved herein was suggested by any officer

of the bank. But it is the circumstances mentioned which counsel for the plaintiff contend are sufficient, if not to show an agreement or understanding between the bank and Green that the account was opened for the purpose stated, to put the bank upon inquiry as to the source from which said Green obtained the moneys deposited in said account and so ascertain that said moneys were so deposited for the express purpose, so far as necessary or as they might do so, of satisfying the claims of those furnishing materials used in the construction of the Silva garage and performing labor thereon. The proposition is as untenable as it is novel, so far as the present consideration is concerned.

[4] A banker is not required to go "snooping" about to learn from what source his depositors obtain the moneys which they deposit in his bank. His duties as a depositary of moneys are fulfilled if he keeps and handles the moneys deposited with him according to the requirements of the depositor or the conditions upon which the deposit is made, and these requirements or conditions, if they impose something beyond his usual or ordinary obligations in the matter of the handling of deposits of money, must be brought home to him by instructions by the depositor or an agreement between him and the depositor so clear or so unambiguous and unequivocal as to leave no room for a reasonable doubt as to their meaning and scope. [5] A depositor may establish an account in a bank under a special designation or earmarked as a particular account, and yet, in the absence of an agreement with or instructions to the banker that the account so earmarked is a special deposit or is to be used for a specific purpose, the moneys deposited therein are to be regarded as belonging to the general account of the depositor and may be so treated by the bank. In this case, unless, as is the contention here which is later to be considered herein, the moneys received by a building contractor as payments under a contract made in pursuance of the provisions of the mechanic's lien law constitute, as a matter of law, trust funds in the hands of the contractor, and so marked when deposited, there was no duty resting upon the defendant to prosecute an inquiry to determine from what source the moneys so deposited were derived by Ernest Green or what the character of the deposit was with respect to the legal or contractual relation of the depositor thereto. [6]

The "earmarking" of a bank deposit or giving to it a special or particular designation, even when the bank has, by the request of the depositor, entered in its deposit-books the deposit as so earmarked or designated, can mean nothing, so far as the bank is concerned, in the absence of specific instructions to the bank by the depositor that the deposit is to be used for the special purpose indicated by the "earmark" or designation. So far as the record here shows to the contrary, Ernest Green might have caused the several accounts opened by him in the defendant bank and given each a special and different earmark for his own convenience. Such a practice, as we know from common knowledge, is quite general among business men, particularly those engaged in the wholesale trade. For their own convenience they keep a separate account of the different commodities in which they deal. Thus they are the more readily able to learn whether there be profit or loss in the sale of any particular commodity. And so, probably, with building contractors having a number of different contracts for the construction of buildings concurrently in the course of execution. But the outstanding fact in this case is, as above explained, that there is no evidence in this record showing that there was any understanding between the bank and Green or any direction by the latter to the bank that the account in controversy was opened and the money therein deposited to be appropriated to a special purpose, and it follows that the said account, unless for other reasons it involves a trust fund, constitutes a general deposit of said Green, even though the defendant knew or had reason to believe that the funds so deposited were to be devoted to the payment of the claims of materialmen, mechanics, and laborers furnishing material for and performing labor on the Silva garage. (*Cabrera* v. *Thannhauser*, 183 Cal. 604, 607 [192 Pac. 45]; *McBride* v. *American Lighting Co.*, 60 Tex. Civ. App. 226 [127 S. W. 229].) In the case last named it is said: "When money or its equivalent is deposited in a bank without any special agreement, the law implies that it is to be mingled with the other funds of the bank, the relation of debtor and creditor is created between the bank and the depositor, and the deposit is general."

In Tiffany on Banks and Banking, page 20, the rule as to deposits in banks is thus stated: "Where . . . money is de-

posited for the purpose of paying the indebtedness of a third person, if no contrary instructions are given, it is customary to mingle the money with the funds of the bank, and upon principle it seems that the bank is to be regarded as the debtor of the depositor. In this view neither the depositor nor the beneficiary under the agreement is entitled to any preference over other creditors if the bank fails to apply the funds according to the agreement." (See, also, *People* v. *California Safe Deposit & Trust Co.*, 23 Cal. App. 199 [137 Pac. 1111, 1115]; *Plumas County Bank* v. *Rideout, Smith & Co.*, 165 Cal. 126, 138 [47 L. R. A. (N. S.) 552, 131 Pac. 360]; *Newmark Grain Co.* v. *Merchants' Nat. Bank*, 166 Cal. 203 [135 Pac. 958].)

[7] 2. We come now to the consideration of the theory that the moneys received by Ernest Green on the contract price of the Silva garage constituted trust funds in the hands of said Green and by him held for the benefit and use, *pro tanto*, or so much thereof as might be found necessary to satisfy their claims, of those furnishing the materials used in and the labor required to construct the garage.

It certainly cannot be considered that a trust relation, as to the moneys received by a contractor on the contract price of a building, between such contractor and his materialmen, mechanics, and laborers, can be worked out of the mechanic's lien law itself. Manifestly this cannot be done, since, the relation between a building contractor and those he employs to assist and who do assist in the construction of a building by furnishing materials therefor and performing labor thereon is only that of debtor and creditor. This is even true where the building contract is made in pursuance of the provisions of the mechanic's lien law. Such a contract, in and of itself, is, in its general legal characteristics, the same as any ordinary agreement between two or more parties to do or not to do a particular act or thing. It is taken out of the class of ordinary contracts only because the constitution has guaranteed to persons furnishing materials for and performing labor upon a building under it a special remedy, inapplicable to other kinds of contracts, for the satisfaction of their claims for such materials and labor. The statutory provisions relative to mechanics' and laborers' liens are merely intended for the effectual enforcement of the remedy

63 Cal. App.—11

so given, and the constitutional guarantee of such remedy and the code provisions designed for its proper enforcement have not had, nor were they intended to have, the effect of changing the legal relation between a building contractor and those whose materials and labor the former employs in furthering the construction of the building from that of debtor and creditor. The mechanic's lien law itself affords ample protection to the rights not only of persons furnishing materials to be used and used in and those performing labor upon the building, but also to the rights of the owner of the structure, and all this without impairing or in any manner jeopardizing the just rights of the contractor. With the safeguards thus thrown around and protecting the rights of all the interested parties in a building contract by the mechanic's lien law, there was no necessity for injecting into such contracts the elements of a trust relation between any such parties, and it is certain that such was not the intention of the legislature.

Counsel for the plaintiff, however, seem to suppose or assume that by the provisions of section 506 of the Penal Code, as said section was amended in 1919 (Stats. 1919, pp. 1090, 1091), a trust relation, as to payments to a building contractor on the contract price of the structure, is established between such contractor and materialmen, mechanics, and laborers contributing with their materials and labor to the construction of the building. That section, prior to its purported amendment, provided that it is the crime of embezzlement for certain persons enumerated therein to appropriate to any use or purpose not in the due and lawful execution of their trust any moneys or property with which they are intrusted. Included in the list of such persons, as the section read prior to the attempt to amend it in the year 1919, is "any contractor who appropriates money paid to him for any use or purpose other than that for which he received it." The amendment of 1919 added the following provision: "and the payment of laborers and materialmen for work performed or material furnished in the performance of any contract is hereby declared to be the use and purpose to which the contract price of such contract, or any part thereof, received by the contractor, shall be applied." Undoubtedly, if this amendment were valid or infringed no

right or immunity guaranteed to every person within this state by the constitution of California, the account in question, having been made by moneys received by Ernest Green on the contract price of the Silva garage, would constitute a trust fund, or a fund held in trust by said Green for the benefit, at least *pro tanto,* or for so much as their claims amounted or might amount to, of materialmen, mechanics, and laborers furnishing materials for use, and labor performed in the construction of said garage. And in such case the defendant would be charged with notice, or at least by the earmarking of the account as "Ernest Green, Silva garage," put upon notice of the trust character of the moneys deposited therein. But, unfortunately for the plaintiff, so far as this case is concerned, but, as may pertinently be added, fortunately for building contractors that thus they are guaranteed immunity from the menace or peril of a prison sentence from the inception of every building contract into which they enter until its completion, section 506, as amended in 1919, has been declared to be violative of article I, section 15, of our state constitution interdicting imprisonment for debt. (*People* v. *Holder,* 53 Cal. App. 45 [199 Pac. 832], opinion by Finlayson, P. J.) The opinion in that case and the conclusion therein arrived at were approved by the supreme court by its denial of a petition to hear the case after judgment in the district court of appeal. In that opinion it is made very plain that the obvious object or purpose of the above-mentioned provision of the constitution of this state, whose language is, *inter alia,* that "no person shall be imprisoned for debt in any *civil* action, . . . unless in cases of fraud," cannot be circumvented or in anywise rendered abortive by an act of the legislature making the act of failing to pay a debt a public offense, where fraud does not enter as an element into such act.

Counsel ask this court, if a reversal of the judgment herein be ordered, to order the court below to enter judgment upon its findings and the agreed statement of facts for and in favor of the defendant. This, we think, we should not do. Upon a retrial a different state of facts might be shown upon the question of notice to the bank or of an agreement between the latter and Ernest Green that the account in question was opened for the use and benefit of a special purpose.

However, for the reasons hereinabove considered and expressed, the judgment is reversed.

Burnett, J., and Finch, P. J., concurred.

A petition by respondent to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on September 20, 1923.