Opinion
 

 BLEASE, Acting P. J.
 

 Plaintiff, Wen Chang, appeals from a summary judgment in favor of defendant, Redding Bank of Commerce (the Bank), in Chang’s action for unjust enrichment and to impose a constructive trust on funds he claims the Bank misappropriated. The action arises out of the Bank’s setoff of $200,000 against a debt owed the Bank from the business account of Paragon Development Enterprises, Inc. (Paragon).
 

 Paragon, a general contractor, was constructing a hotel for Chang. Chang paid the funds to Paragon for the purpose of paying subcontractors, and Paragon deposited the money in its business checking account. Paragon issued checks to its subcontractors, the Bank recorded the checks tendered by the subcontractors as paid, then “reversed the transactions,” seizing the money to setoff money owed the Bank by Paragon. It did so in reliance on a provision of a loan agreement with Paragon which authorized an offset in the event of a default. Chang settled the subcontractors’ mechanics’ lien claims
 
 *678
 
 and commenced this action to recover the money from the Bank. Chang, having paid the subcontractors, has standing under principles of equitable subrogation to assert their rights.
 

 We will conclude that progress payments received by a general contractor pursuant to a contract which requires that they be paid to subcontractors are held by the contractor in trust for the benefit of the subcontractors. A bank that has knowledge sufficient to require inquiry whether funds deposited by a general contractor to its account with the bank are trust funds cannot, as against the subcontractors, set off the funds to pay an indebtedness owed the bank by the general contractor.
 

 We conclude that there is a triable issue of fact whether the Bank had notice that the funds were trust funds.
 

 Accordingly, the summary judgment must be reversed.
 

 Facts
 

 In June 1991, Paragon agreed to build a hotel for Chang in Lodi. The contract provided, inter alia, that “[Paragon] shall promptly pay each Subcontractor, upon receipt of payment from [Chang], out of the amount paid to [Paragon] on account of such Subcontractor’s Work, the amount to which said Subcontractor is entitled . . . .”
 

 In October 1991, Paragon requested from Chang a $219,000 progress payment to pay subcontractors for work completed on the project. Chang paid Paragon by cashier’s checks. On October 9, Paragon deposited the money into its business checking account, which Paragon had maintained with the Bank since 1986.
 

 Paragon, its president, Ralph Steams, and Paragon subsidiaries (Aukerman Plumbing and BDL Interiors) maintained several accounts and held outstanding loan balances with the Bank. The Bank’s credit approval reports for loans to Paragon for working capital indicate the Bank was familiar with the nature of Paragon’s business, conducted financial reviews of its operation, and knew Paragon was experiencing cash flow problems.
 

 Paragon had borrowed $500,000 from the Bank on a promissory note due December 31, 1991. The note says Paragon will be in default if the Bank in good faith deems itself insecure. The note was secured by the funds in Paragon’s business checking account, against which the Bank could offset Paragon’s indebtedness in the event of default.
 

 
 *679
 
 In early October 1991, around the same time as Paragon’s deposit of Chang’s progress payment, Barbara Hopson, a vice-president of the Bank and the loan officer who approved Paragon’s loan, received information from several sources that Paragon was financially distressed, filing for bankruptcy, and closing shop.
 
 [1]
 
 Hopson informed Russell Duelos, the Bank’s executive vice-president and senior loan officer, of her findings. Duelos investigated further, then deemed the Bank insecure. On October 11, the Bank declared Paragon’s note immediately due and set off its claim against Paragon’s business checking account.
 

 Checks that Paragon had already issued to its subcontractors and that the Bank had recorded as paid were subsequently returned by the Bank; some were stamped as “paid in error.” The largest of these was a check for $164,605 to an excavating subcontractor, written on September 30, 1991. Paragon’s bank statement indicates the Bank paid this check on October 10, one day after deposit of the progress payment and one day
 
 before
 
 the Bank offset Paragon’s indebtedness against the account. The Bank reversed the payment at the time of offset. After the reversal, the account contained $509,318; the balance due on the note was $499,500.
 

 Subsequently, the subcontractors filed mechanics’ liens against Chang’s project. Chang settled the subcontractors’ claims, then commenced this action against the Bank for unjust enrichment and imposition of a constructive trust.
 
 [2]
 

 Chang’s complaint alleges that he entrusted the $219,000 to Paragon for the sole purpose of paying the project’s subcontractors and suppliers, and the Bank knew or should have known that Paragon was a general contractor engaged in work in progress and that the $219,000 deposit was a progress payment for the benefit of the project’s subcontractors.
 

 The Bank moved for summary judgment on the grounds that Paragon’s deposit of the progress payment into its general business checking account does not, without more, establish the deposit’s character as a trust for the subcontractors’ benefit; that, even if the funds were held in trust, the Bank had neither actual nor constructive notice of the funds’ character; and that Chang has no “standing” in any event, as a noncustomer of the Bank, to challenge the Bank’s setoff against Paragon’s account.
 

 
 *680
 
 In support of its motion, the Bank pointed to evidence that no special instructions for handling funds accompanied the opening of Paragon’s checking account, that Chang’s progress payment was made by cashier’s check issued to Paragon by Chang’s bank and that Chang’s name did not appear on the check, that the check was deposited in the ordinary course of business, and that neither the check nor the deposit slip contained any special instructions or notice that the funds were held in trust or intended for any specific purpose. Hopson declared that she was not informed, nor was there any documentation, the funds were held in trust or otherwise devoted to any special purpose. The declaration of Duelos, who made the setoff decision, omits any similar assertions. Hopson also declared that Chang was not a party to any agreement with the Bank, including any agreement with regard to the funds in Paragon’s account.
 

 Chang pointed to evidence (Paragon’s dealings with the Bank over several years) that indicated the Bank was familiar with Paragon’s business, therefore the Bank knew, or should have known, this sizable deposit was a progress payment intended for the benefit of subcontractors and thus could not be used by Paragon for any other purpose. He also pointed to evidence (bank statements and canceled checks written to subcontractors and marked “paid in error” or posted as paid on Bank records and subsequently “reversed”) to show the Bank knew Paragon was paying subcontractors from its account.
 

 At the hearing on the motion, the trial court focused on the issue of Chang’s “standing” to sue the Bank, “because I think there’s sufficient evidence from the bank’s affidavit that they knew or . . . should have known that the funds were deposited [for the specific purpose of paying subcontractors].”
 

 The court granted the Bank’s motion on the ground that Chang has no “standing,” as a noncustomer, to sue the Bank for unjust enrichment and imposition of a constructive trust, “regardless of whether or not there is a triable issue of fact with respect to the Bank’s actual or constructive knowledge of the source and purpose of the funds . . . deposited in the subject account.” This appeal followed the ensuing entry of judgment for the Bank.
 

 Discussion
 

 I
 

 The Bank contends the trial court was correct in granting summary judgment on the ground that Chang has no “standing” to impose a constructive trust on funds Paragon deposited into a general bank account. The Bank
 
 *681
 
 concedes for present purposes
 
 [3]
 
 that Chang is able to satisfy the elements of equitable subrogation allowing him to pursue whatever rights the subcontractors might have in the disputed funds.
 
 [4]
 

 The Bank also contends the subcontractors lack standing to impose a constructive trust. The contention is predicated on the Bank’s claim that a noncustomer has no "standing to impose a constructive trust on funds in a general account unless it is shown the funds were deposited for a special purpose, i.e., in trust for third parties, and that Chang failed to show the funds in question were deposited for such a special purpose. However, if the funds are shown to have been deposited in trust for the subcontractors and that Bank knew or should have known of the trust, there is no merit to the claim.
 

 The fund in issue consists of money deposited in a general deposit bank account. As between a bank and the depositor such money becomes the property of the bank and the bank becomes the debtor of the depositor for the amount deposited.
 
 (Morse
 
 v.
 
 Crocker National Bank
 
 (1983) 142 Cal.App.3d 228, 232 [190 Cal.Rptr. 839].) If the depositor is indebted to the bank and his note is due, there is a mutuality of obligation from which flows an equitable right of setoff—the bank ordinarily may set off its debt against the depositor’s debt by appropriating funds from the depositor’s account. (E.g.,
 
 Gonsalves
 
 v.
 
 Bank of America
 
 (1940) 16 Cal.2d 169, 173 [105 P.2d 118]; also see, e.g., 5A Michie, Banks and Banking (1983) § 115c, p. 352.)
 

 The Bank suggests that all moneys deposited in a general account are subject to these rules regardless whether it has notice the money is the subject of a trust relationship. It relies on this court’s decision in
 
 American Surety Co.
 
 v.
 
 Bank of Italy
 
 (1923) 63 Cal.App. 149 [218 P. 466]
 
 (American Surety).
 
 The case does not stand for that broad proposition. We there said that moneys deposited in a general account by a contractor are to be regarded as belonging to the general account and may be so treated by the bank and “. . . there [is] no duty resting upon the [bank] to prosecute an inquiry to determine from what source the moneys so deposited were derived . . .”
 
 *682
 

 “unless
 
 ... the moneys received . . . constitute, as a matter of law, trust funds in the hands of the contractor . . . .”
 
 (Id.
 
 at p. 159, italics added.)
 

 The rule is that when the funds are trust funds and the bank knows or has knowledge of facts sufficient to put it on inquiry that the funds are held by the depositor in trust, the bank may not, as against the beneficiary, apply those hinds to the depositor’s individual indebtedness to the bank. (See, e.g.,
 
 Purdy
 
 v.
 
 Bank of America N.T.&S. Assn.
 
 (1935) 2 Cal.2d 298, 301 [40 P.2d 481];
 
 Keeney
 
 v.
 
 Bank of Italy
 
 (1917) 33 Cal.App. 515, 517-518 [165 P. 735]; Rest.2d Trusts, § 324, com. i; 5A Michie, Banks and Banking,
 
 supra,
 
 § 130 et seq.; Annot., Bank’s Right to Apply Third Person’s Funds, Deposited in Debtor’s Name, on Debtor’s Obligation (1966) 8 A.L.R.3d 235, 239-243.) “The principle is by no means new or novel, having been promulgated with the ten commandments when it was said, ‘Thou shalt not steal.’ ”
 
 (United States etc. Co.
 
 v.
 
 First Nat. Bk.
 
 (1912) 18 Cal.App. 437, 440 [123 P. 352].)
 

 Accordingly, the resolution of the trust question resolves the standing question.
 

 II
 

 A.
 

 The Bank does not dispute that Chang gave the money to Paragon and Paragon took title to the money pursuant to the terms of a construction contract which provided that the funds were to be used for the sole purpose of paying project subcontractors. It submits that this is not enough to establish the money’s character as a trust fund and that nothing short of an express agreement between Paragon and the Bank regarding the trust character of the funds will defeat the Bank’s right to a setoff. The Bank relies for this proposition on this court’s opinion in
 
 American Surety, supra.
 

 In
 
 American Surety,
 
 a general contractor (Ernest Green) opened a bank account labeled “Ernest Green, Silva Garage” into which he deposited payments received on his contract with the owners of the Silva garage project. Green maintained a separate personal account and other business accounts with the bank under particular project names. The bank applied the funds in the “Silva garage” account, which contained money intended for project subcontractors, to Green’s personal indebtedness. Tlie plaintiff, a surety of the owners, paid off the accrued claims of laborers and material-men.
 

 The plaintiff claimed the money on two theories: (1) the bank and Green had agreed the money deposited in the account would be used only to pay
 
 *683
 
 subcontractors on the garage project, and (2) the money so deposited constituted a trust account
 
 as a matter of law. (American Surety, supra,
 
 63 Cal.App. at p. 157.) We found the first theory untenable for lack of evidence of an agreement between the bank and Green.
 
 (Id.
 
 at pp. 157-161.) We found the second theory untenable on two grounds.
 

 The first ground was that a trust relationship between the general contractor and the subcontractors could not “be worked out of the mechanics’ lien law itself.”
 
 (American Surety, supra,
 
 63 Cal.App. at p. 161.) The second ground was that a trust relationship could not be predicated on section 506 of the Penal Code, because it had been held unconstitutional in
 
 People
 
 v.
 
 Holder
 
 (1921) 53 Cal.App. 45 [199 P. 832],
 
 (American Surety,
 
 63 Cal.App. at pp. 162-163.)
 
 Holder
 
 held that, to the extent Penal Code section 506 imposes a criminal sanction for mere breach of an agreement to pay a debt, it violates the constitutional prohibition against imprisonment for debt and, to the extent it declares the purpose of the contract price regardless of what the parties might have agreed to, it interferes with the parties’ right to contract as they please.
 
 [5]
 

 (People
 
 v.
 
 Holder, supra,
 
 53 Cal.App. at pp. 50-54.)
 

 Notably lacking in
 
 American Surety
 
 is any claim that a trust relationship arose, as a matter of fact, from the contract between Green and the owners of the garage.
 

 B.
 

 Bank also relies upon
 
 In re Pedrazzini
 
 (9th Cir. 1981) 644 F.2d 756 for its claim that only an express agreement between it and Paragon regarding the trust character of the funds will suffice.
 
 Pedrazzini
 
 addressed the question whether the contractor’s debt to a project owner, arising from its failure to pay over progress payments to subcontractors, could be discharged in bankruptcy. The owner claimed that discharge should be prohibited under a bankruptcy statute provision prohibiting discharge for liabilities created by misappropriation of funds in a fiduciary capacity. The owner’s claim was that a general contractor was a fiduciary as to a fund owed subcontractors, as a matter of law, based upon provisions of the Business and Professions and
 
 *684
 
 Penal Codes. The
 
 Pedrazzini
 
 opinion rejected these statutory claims deciding that while the bankruptcy provision “may extend beyond a
 
 consensual
 
 trust, to a trust created by statute”
 
 (Id.
 
 at p. 758, fn. 2, original italics), the statutory claim was inadequate under the federal bankruptcy law because of a timing requirement.
 

 Pedrazzini
 
 is inapposite because it turns upon the federal bankruptcy law and because it, like
 
 American Surety,
 
 neither considers or decides a claim of consensual trust arising from the contract between the project owner and the contractor. We turn to that question.
 

 C.
 

 A trust “is a fiduciary relationship with respect to property, subjecting the person by whom the title to the property is held to equitable duties to deal with the property for the benefit of another person, which arises as a result of a manifestation of an intention to create it.” (Rest.2d Trusts, § 2.) A trust is created by a manifestation of intention of the settlor to create a trust, trust property, a lawful trust purpose, and an identifiable beneficiary. (See, Prob. Code, §§ 15201-15205; also see, e.g., 11 Witkin, Summary of Cal. Law (9th ed. 1990) Trusts, §§ 26-48, pp. 911-930.)
 

 The pertinent rules for determining the trust or nontrust character of a transfer of money for the payment of a third party are set out in the Restatements Second of Trusts and Agency, respectively, as follows:
 

 “Where a person pays money to another with instructions to pay a debt of the former to a third person, it depends upon the manifestation of intention of the parties whether a trust or an agency or a contract is created, [¶] If the person receiving the money is not entitled to use it as his own, a trust or an agency is created. . . . [¶] If the person receiving the money is entitled to use it as his own, a contract for the benefit of the creditor is created . . . .” (Rest.2d Trusts, § 14, com. g, p. 47.)
 

 “If a person receives property from another who manifests an intention that the transferee is to hold the property for the benefit of and subject to the control of the transferor, an agency is created, whether or not title is transferred. If the title is transferred, the transferee is an agent-trustee. If, on the other hand, the person receiving the property is not to act under the control of the other, he is not an agent; if he receives title to the property, he is a trustee.” (Rest.2d Agency, § 14 B, com. c, p. 63; also see, e.g., Rest.2d Trusts, § 8, com. h, p. 25; I Scott on Trusts (4th ed. 1987) §§ 14-14.3, pp. 184-195.)
 

 
 *685
 
 Chang, as the owner of the project, was indebted to the subcontractors, since their claims could be enforced under the mechanics’ lien law against his property. Paragon received the funds from Chang with instructions to pay the subcontractors. Lawful receipt of the funds by Paragon vested title thereto in Paragon. (See 54 Am.Jur.2d, Money, § 6.) There is nothing in the contract that suggests that, upon Paragon’s receipt of the funds, Paragon was to act under Chang’s control. Paragon was not free to use the funds as its own. The contract provides that Paragon is to pay the subcontractors “out of the amount paid to [Paragon]” by Chang. In these circumstances, trust law provides that the contract established a trust as to the progress payment funds. Chang is the settlor, Paragon is the trustee, the subcontractors are the beneficiaries, and the progress payments are the trust res. (See, e.g.,
 
 American Surety, supra,
 
 63 Cal.App. at pp. 162-163 and fn. 5,
 
 ante.)
 

 [6]
 

 III
 

 We next consider whether there is a triable issue that the Bank had notice the fund was trust money. The Bank had notice if it actually knew of the facts rendering the Chang progress payment a trust fund or if it knew facts which would lead a reasonably intelligent and diligent person to inquire whether Paragon was acting as a trustee of the funds. (See Rest.2d Trusts, § 297, com. a; § 324, coms, i and j.)
 

 On this record there is a triable issue of fact as to such notice.
 

 The Bank concedes that it “was aware that Paragon ‘was a general contractor who received funds from owners and subsequently made payments to subcontractors,’ . . . and thus had knowledge of the general ‘purpose’ of the funds in Paragon’s general account.” In addition, on the day following the deposit the Bank posted as “paid” a check for $165,000 written by Paragon to an excavating subcontractor, among others. The day
 
 after
 
 that, the Bank appropriated the funds in Paragon’s account.
 

 Chang suggests that the facts suffice to impose a duty of inquiry whether the funds were held in trust for the subcontractors. The premise is implicit that all progress payments received by a general contractor under an obligation to pay subcontractor’s claims are held in trust. However, as we have explained, that is only the case when, under the terms of the construction contract, the general contractor is not free to use the funds as his own.
 

 
 *686
 
 There is no evidence whether the Bank was aware of the provision in the Chang/Paragon contract which obligated Paragon to pay the subcontractors “out of the amount paid to [it]. . . .” There is nothing in the record whether such a provision is common in construction contracts. However, under California law there need be no express contract provision restricting the use of a progress payment to the payment of subcontractors, laborers, and material suppliers. Such earmarking is an implicit term of the contract when the general contractor is obliged to supply the material and labor necessary to complete the project and is to receive progress payments. (See
 
 People
 
 v.
 
 Howard
 
 (1969) 70 Cal.2d 618, 625-626 [75 Cal.Rptr. 761, 451 P.2d 401];
 
 People
 
 v.
 
 Butcher
 
 (1986) 185 Cal.App.3d 929, 937 [229 Cal.Rptr. 910].)
 

 These considerations suffice to warrant the conclusion that there is a triable issue of fact whether the Bank knew facts which under the circumstances would lead a reasonably intelligent and diligent person to inquire whether Paragon was acting as a trustee of the Chang/Paragon progress payment funds.
 

 IV
 

 That leaves the Bank’s policy arguments that the law of trusts should not be applied because (1) Chang “imprudently” failed to avail himself of other available tactics to protect the progress payment in the event of Paragon’s insolvency and (2) because uncertainties about the Bank’s right to set off funds in a general contractor’s account will impair the general contractors’ abilities to raise capital and obtain credit. We find these policy claims unpersuasive.
 

 Chang’s “imprudence” does not partake of culpable conduct; one might as easily fault the Bank for trusting Paragon by loaning it money. If Chang had “prudently” taken the steps the Bank suggests, such as issuing its progress payment checks in the names of both Paragon and its subcontractors, the Bank would have been without the windfall of funds to offset its “imprudent” loan to Paragon.
 

 Paragon’s failure to segregate and identify the progress payment as funds held in trust for the subcontractors is the root cause of Chang’s distress and the Bank’s claim that it is entitled to them. As related, that constitutes a breach of trust as to the subcontractors, in whose shoes Chang stands. The fact that Chang or the subcontractors could have taken other protective measures does not mean that either should be deprived of the ordinary protection of the law of trusts. “[L]aws are designed to protect the unsophisticated as well as those who can protect themselves.”
 
 (People
 
 v.
 
 Howard, supra,
 
 70 Cal.2d at p. 625.)
 

 
 *687
 
 The Bank’s alternate claim concerning the impairment of credit to contractors is also unpersuasive. A contractor can and is obliged to segregate and identify funds held in trust as trust funds (fn. 6,
 
 ante);
 
 clients’ trust fund accounts are not a novel device and are routinely employed by attorneys. If that duty is complied with, banking institutions will have no difficulty identifying which funds belong to the contractor and are available for setoff. If the current general practice, due to ignorance of the law, is to breach this trust obligation routinely, the remedy is to change the current general practice.
 

 In any event, the administrative inconvenience to banks of an inappropriate setoff seems slight. If there is a protest on behalf of a purported trust beneficiary a bank can easily ascertain the merits of the claim from the construction contract and, if meritorious, can relinquish the trust funds—say, by reversing the setoff transaction.
 

 The darker implication of the Bank’s impairment of credit argument is that a general contractor’s ability to raise credit from banks materially depends upon the availability to banks of windfalls presented by the contractor’s failure to identify trust funds as such. Needless to say, we have no sympathy for the claim there is an institutional need to prey on the unwary. (See generally,
 
 Union Stockyards National Bank
 
 v.
 
 Gillespie
 
 (1890) 137 U.S. 411 [34 L.Ed. 724, 11 S.Ct. 118].)
 

 Disposition
 

 The judgment is reversed. Plaintiff shall recover costs on appeal.
 

 Scotland, J., and Raye, J., concurred.
 

 Respondent’s petition for review by the Supreme Court was denied February 2, 1995.
 

 [1]
 

 On October 11, two days after the progress payment, Paragon informed Chang that it was out of business and withdrawing from all jobs. Paragon told Chang it still intended to pay in full all subcontractors on Chang’s project.
 

 [2]
 

 Chang also sued Paragon for breach of contract and unjust enrichment. Paragon closed shop in October 1991, and its owner is said to have “disappeared." Paragon’s creditors, including Chang, filed an involuntary bankruptcy petition against Paragon in January 1992. Paragon has not appeared in this action and is not a party on this appeal.
 

 [3]
 

 The Bank does footnote a claim that Chang failed to adduce detailed evidence in support of his claim to have paid the subcontractors but does not pursue the point. The claim is in any event not well taken. Where a summary judgment is sought by a defendant it is the defendant’s burden to show that material facts are not in dispute. (See, e.g.,
 
 Pultz
 
 v.
 
 Holgerson
 
 (1986) 184 Cal.App.3d 1110, 1114 [229 Cal.Rptr. 531].) Chang’s complaint puts the question of payment of the subcontractors in dispute and the Bank has not shown that they were not paid.
 

 [4]
 

 Equitable subrogation “include[s] every instance in which one person, not acting as a mere volunteer or intruder, pays a debt for which another is primarily liable, and which in equity and good conscience should have been discharged by the latter.”
 
 (Estate of Kemmerrer
 
 (1952) 114 Cal.App.2d 810, 814 [251 P.2d 345, 35 A.L.R.2d 1393].)
 

 [5]
 

 Penal Code section 506, in pertinent part, provides: “. . . [T]he payment of laborers and materialmen for work performed or material furnished in the performance of any contract is hereby declared to be the use and purpose to which the contract price of such contract, or any part thereof, received by the contractor shall be applied.”
 

 Notably, the opinion in
 
 American Surety
 
 says that if Penal Code section 506 were constitutional the account in question “would constitute a trust fund.” (63 Cal.App. at pp. 162-163.) That is to say, if the statute constitutionally required that in every construction contract the use and purpose of any portion of the contract price funds received by the general contractor is to pay laborers and materialmen, a trust relationship would be established as a matter of law.
 

 [6]
 

 A consequence of this conclusion is that, absent a contrary provision in the contract giving rise to the trust (see Prob. Code, § 16000), Paragon was obliged to keep the progress payment separate from other property not subject to the trust and to see that it was designated as property of the bust. (See Prob. Code, § 16009.) Failure to do so was a breach of trust owed to the subcontractors. (See Prob. Code, § 16400.)