**In re Howard C. CHAMBLIN, a/k/a H.C. Chamblin and Caroline R. Chamblin, Debtors.**

**Bankruptcy No. 288–20239–7.**

United States Bankruptcy Court,
N.D. Texas,
Amarillo Division.

Nov. 20, 1989.

Jim Clements, Amarillo, Tex., Trustee–in–Bankruptcy.

Arthur Glover, Amarillo, Tex., for debtor.

Larry Sherman, Gibson, Ochsner & Adkins, Amarillo, Tex., for FNB Amarillo.

## MEMORANDUM OF OPINION ON SETOFF

JOHN C. AKARD, Bankruptcy Judge.

The First National Bank of Amarillo (Bank) challenges the application of § 553(b) of the United States Bankruptcy Code[1] to the amount the Debtor's deposit account increased during the 90 day pre-petition preference period. The specific issue before the court is whether a trustee recovers amounts authorized under § 553(b) free and clear of the creditor's claim or whether the amount recovered remains encumbered by a possessory lien.

### Statement of Facts

On April 22, 1988, Howard C. Chamblin and wife, Caroline Chamblin (Debtors), filed for relief under Chapter 7 of the Bankruptcy Code. On January 23, 1988 (the 90th day before bankruptcy) the Debtors had on deposit, in the Bank, $83.41, while at the same time owing the Bank $248,254.71. Thus an insufficiency in the amount of $248,271.30 was apparent on the 90th day before bankruptcy.

On April 8, 1988 the Bank offset the Debtors' demand account in the amount of $7,309.42. At that time, the insufficiency amounted to $245,698.96. The difference in the insufficiency on the operative dates—January 23 and April 8—is $2,572.34. It is this amount that the Bank urges should be returned to the trustee but remain encumbered by the Bank's possessory lien.

### DISCUSSION

A. The Operative Statute—

Section 553(b)(1) of the Bankruptcy Code provides in pertinent part that:

(b) ... if a creditor offsets a mutual debt owing to the debtor ... before the date

---

1. The Bankruptcy Code is 11 U.S.C. § 101 *et seq.* References to section numbers are references to sections in the Bankruptcy Code.

of the filing of the petition, then the trustee can recover from such creditor the amount so offset to the extent that any insufficiency on the date of such setoff is less than the insufficiency on the later of—

(A) 90 days before the date of filing of the petition, and

(B) the first date during the 90 days immediately preceding the date of the filing of the petition on which there is an insufficiency.

In summary, § 553(b) provides that "prepetition setoffs during the 90 days before filing that work an improvement in the offsetting creditor's position are recoverable by the trustee to the extent of the improvement." 4 *Collier on Bankruptcy* ¶ 553.08 (15th ed. 1989). The "insufficiency" addressed in the Code refers to the amount the creditor's claim against the debtor exceeds the debtor's claim against the creditor. Thus, if a creditor offsets during the 90 day period, improving its position over what it would have been on the first date an insufficiency arose, the increase is recoverable. 4 *Collier on Bankruptcy, supra,* at 553–47.

### B. *Bank's Contentions.*

■ The Bank concedes that its setoff is subject to the "improvement test," but argues that the amount recovered remains encumbered by the Bank's lien. It asserts that § 553(b) is diametrically opposed to § 553(a) in that § 553(a) establishes the right to setoff and § 553(b) takes it away. This, urges the Bank, discriminates against the diligent creditor who would have full postpetition (*e.g.,* cash-collateral) rights should it wait to collect until after the filing. Thus, the Bank continues, § 553(b) must be artfully interpreted to square the relevant statutes with Congressional intent.

At first blush, the Bank's argument appears plausible. However, a review of Congressional objectives underlying § 553(b) quickly dispels any argument that the amounts recoverable by the trustee remain burdened by a possessory lien.

### C. *Legislative History.*

■ Initially, it must be noted that because § 553 creates a permissible preference of one creditor over another, the provision must be strictly construed. *In re H. Wolfe Iron & Metal Co.,* 64 B.R. 754 (Bankr.W.D.Pa.1986).

Contrary to the Bank's argument, the purpose of § 553(b) is not to undermine § 553(a), but rather to qualify the rights granted therein. "The purpose of limiting the Bank's prepetition right of setoff is to discourage banks from taking precipitous action, and to encourage ... workouts." 4 *Collier on Bankruptcy, supra,* at 553–65. "If a bank offsets, it will force the bank's debtor into bankruptcy, to everyone's disadvantage." HR Rep. No. 595, 95th Cong., 1st Sess. 185, 186 (1977). Congress recognized that often a bankruptcy is triggered when banks offset their debtor's accounts, leaving them without ready cash. Shanker, *The Unsettled Setoff Right in Bankruptcy: A Critique of Statutory Lotteries in and the Braniff-Exxon Dogfight over § 553,* Annual Survey of Bankruptcy Law 103, 109 (1988).

The Bank argues that § 553(b) imposes a penalty for exercising, prior to bankruptcy, the very setoff right which it might lawfully assert post-petition. I must agree with this analysis. Section 553(b) does indeed have the effect of a penalty. Congress inserted § 553(b) as an incentive to encourage workouts. Thus, it provided a penalty for a creditor's premature collection activity.

The Bank's argument that the amount recoverable by the trustee remains encumbered by an equitable interest misses the point of § 553(b). *In re Joe Flynn Rare Coins, Inc.,* 81 B.R. 1009 (Bankr.D.Kan. 1988), is a case in which a bank presented a similar argument to the one here presented. In *Flynn,* the bank asserted that its prepetition setoff was exempt from § 553(b) because it had a security interest in the demand accounts resulting from the security agreements. Even so, the court found that § 553(b) prohibits an improvement in the creditor's secured position. *Id.* at 1024. Arguably then, if § 553(b) prohib-

its an improvement under a written pledge then most certainly it would prohibit an improvement in the absence of one.

The Bank cites the Fifth Circuit's decision in *Braniff Airways, Inc. v. Exxon Company, U.S.A.* 814 F.2d 1030 (5th Cir. 1987) in support of its interpretation of § 553(b). However, the Bank fails to recognize that the *Braniff* decision dealt primarily with *postpetition* setoff and the application of § 553(b) to a creditor's right to setoff post petition. *Id.* at 1040. *Braniff* does not stand for the proposition that the amount recoverable by the trustee remains burdened by the creditor's possessory lien.

In a district court case, *In re Fox*, 62 B.R. 432 (Bankr.D.R.I.1986), the court examined the language of § 553(b) and flatly stated that the application is simply a mathematical formula resulting in a recovery to the *trustee* if the difference in the insufficiency 90 days before bankruptcy is more than the insufficiency on the date of setoff. The court awarded the difference to the trustee unencumbered by the creditor's possessory lien. *Id.*

The Bank cites none and our research reveals no cases in which courts have held that the creditor retains an equitable interest in the amount recoverable under § 553(b). If § 553(b) is an inefficient way of accomplishing Congressional objectives, it is the responsibility of Congress, not that of the courts to change the method of achieving these objectives. *United States v. Cogdell*, 844 F.2d 179, 187 (4th Cir.1988) (Wilkins, J., dissenting). The message today is simple: Congress had the opportunity to provide as the Bank urges but it " 'did not write the statute that way.' " *Id.* (quoting *Russello v. United States*, 464 U.S. 16, 23, 104 S.Ct. 296, 300, 78 L.Ed.2d 17 (1983)).

First National Bank of Amarillo's Motion to Terminate Stay will be denied.

ORDER ACCORDINGLY.