**In re PARAGON DEVELOPMENT ENTERPRISES, INC., Debtor.**

**PARAGON DEVELOPMENT ENTERPRISES, INC., Plaintiff,**

v.

**REDDING BANK OF COMMERCE, Defendant.**

Bankruptcy No. 92–20176–A–7.
Adversary No. 94–2007.

United States Bankruptcy Court,
E.D. California,
Sacramento Division.

Sept. 30, 1996.

Gregory J. Hughes, Pillsbury, Madison & Sutro, Sacramento, CA, for Defendant Redding Bank of Commerce.

Donald W. Fitzgerald, Deborah J. Frick, Kronick, Moskovitz, Tiedemann & Girard, Sacramento, CA, for Chapter 7 Trustee James C. Larson.

## MEMORANDUM OF DECISION

DAVID E. RUSSELL, Chief Judge.

Chapter 7 Trustee James C. Larson ("Plaintiff") filed a complaint against Redding Bank of Commerce ("Redding") alleging a preferential set-off under 11 U.S.C. § 553(b). Thereafter, Redding filed a motion for summary judgment. After a hearing, the court took the matter under submission. For the reasons set forth below, the court will grant the motion for summary judgment in favor of Redding.

## I. FACTUAL BACKGROUND

In January of 1991, Redding loaned Paragon Development Enterprises, Inc. ("Debtor") $500,000.00. The loan was evidenced by a demand promissory note dated January 17, 1991 with a due date of December 31, 1991, if not sooner demanded. The note gave Redding the right to offset any of the Debtor's accounts held by Redding against Debtor's obligation on the note.

On Thursday, October 10, 1991 (hereinafter the "90th day"), the beginning balance [1] in Debtor's account was $453,510.80. After

---

1. The word "balance" as used in referring to the amount in the Debtor's checking account with Redding refers to the amount set forth on the bank's statement of that account, and, as will be explained below, is merely provisional or temporary and not final.

various transactions totalling $225,258.69, the balance at the close of the banking day on the 90th day was $228,252.11. The decreased balance resulted from two transfers and the payment of five checks drawn against the account. The checks, except for one cashed for $5,000, were posted that evening and subject to reversal the next day, October 11, 1991.

On October 11, 1991, Debtor still owed a principal balance of $499,500.00 to Redding under the promissory note. That same day, Redding offset the balance in Debtor's checking account against this indebtedness. At the time of the setoff, Redding reversed three of the five checks drawn against Debtor's account and received by Redding in the ordinary course of business the prior evening. Redding also reversed two transfers which were posted on the morning of October 11, 1991.[2]

Redding's reversal of these checks and transfers increased Debtor's checking account balance to $402,458.80 on October 11, 1991. Redding then offset the principal balance of the loan owed by Debtor against the funds in Debtor's checking account, leaving Debtor's account overdrawn by $97,041.20 ($402,458.80 minus $499,500.00). Redding received eleven additional checks that day which were drawn against Debtor's account. Thus, the balance sheet at the end of the day indicated that the account was overdrawn by $104,584.95.

To ease understanding of this situation, the following is a list of all of the transactions of importance to this case:

| Date | Description | Amount |
|---|---|---|
| 10/09/91 | Beginning Balance | $285,706.20 |
| | Deposit | 205,680.70 |
| | 11 checks totalling | < 37,876.10> |
| | Ending Balance | $453,510.80 |
| | | |
| 10/10/91 | Beginning Balance | $453,510.80 |
| | Transfer to a/c 1–115–596 | < 14,000.00> |
| | Transfer to a/c 1–117–025 | < 32,000.00> |
| | Check No. 47311 | < 164,605.00> |
| | Check No. 47401 | < 4,508.42> |
| | Check No. 47421 | < 52.00> |
| | Check No. 47422 | < 5,000.00> |
| | Check No. 47507 | < 5,093.27> |
| | Ending Balance | $228,252.11 |
| | | |
| 10/11/91 | Beginning Balance | $228,252.11 |
| | Transfer to a/c of sub 1 | < 44,000.00> |
| | Transfer to a/c of sub 2 | < 83,000.00> |
| | | |
| | Subtotal at 9:59 a.m. (before reversals) | $101,252.11 |
| | Reversal of check No. 47311 | 164,605.00 |
| | Reversal of check No. 47401 | 4,508.42 |
| | Reversal of check No. 47507 | 5,093.27 |
| | Reversal of transfer to sub 1 | 44,000.00 |
| | Reversal of transfer to sub 2 | 83,000.00 |
| | | |
| | Balance at 10:00 a.m. (after reversals) | $402,458.80 |
| | | |
| | **Set-off** | < 499,500.00> |
| | | |
| | Balance at 10:01 a.m. (after setoff) | <$ 97,041.20> |
| | | |
| | 11 checks totalling | < 7,543.75> |
| | Ending Balance | <$104,584.95> |

2. Plaintiff does not challenge the propriety of Redding's reversal of the intrabank transfers.

A deposit of $106,859.23 on Tuesday, October 15, 1991 eliminated the deficiency in the account.[3] According to Redding's October statement, the balance in the account at the end of October was $7.32

On January 8, 1992, an involuntary Chapter 11 petition was filed against Debtor. Thereafter, an order for relief was entered and the case was converted to Chapter 7. Plaintiff filed his complaint starting this adversary proceeding on January 7, 1994, alleging that the setoff was preferential under 11 U.S.C. § 553(b) and seeking to recover $271,247.89 ($499,500 owing on the note less the ending balance on the 90th day of $228,252.11), the amount of the setoff by which Redding allegedly improved its position. Redding filed the instant motion for summary judgment on the ground that the setoff was not preferential.

## II. STANDARDS OF LAW

The court may grant summary judgment if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *See also* Fed.R.Bankr.P. 7056. There. can be no genuine issue of material fact if a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party bears the burden of proof." *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) Because the parties in this case agree on the facts, it is ripe for summary adjudication.

### III. Source of the Right to Setoff

 Section 553 of the Bankruptcy Code governs the exercise of setoffs between debtors and creditors in a bankruptcy case. 11 U.S.C. § 553.[4] It is not an independent source of law but simply "provides that, with certain exceptions, whatever right of setoff otherwise exists is preserved in bankruptcy." *Citizens Bank of Maryland v. Strumpf*, 516 U.S. ——, 116 S.Ct. 286, 133 L.Ed.2d 258 (1995). Thus, the initial source for a right of setoff must be found outside of the bankruptcy code and the creditor invoking that law must comply with all of its parameters.[5] *In re Pieri*, 86 B.R. 208, 210 (9th Cir.BAP 1988).

### IV. The Section 553 Preferential Setoff Limitation

Finding a non-bankruptcy law fount for the power to exercise a setoff is only the creditor's initial hurdle; even if the setoff would be unassailable under the applicable state law, § 553, while not providing a source for the right to setoff, does place certain limits on its exercise against a debtor who later invokes the protection of the Bankruptcy Code.

The section 553 limitation at issue in this case is found in § 553(b). It states:

> if a creditor offsets a mutual debt owing to the debtor against a claim against the debtor on or within 90 days before the date of the filing of the petition, then the trustee may recover from such creditor the amount so offset to the extent that any insufficiency on the date of such setoff is less than the insufficiency on the later of—
>
> (A) 90 days before the date of the filing of the petition; and
>
> (B) the first date during the 90 days immediately preceding the date of the filing of the petition on which there is an insufficiency.

---

3. The issue of whether the deposit itself constituted a "preference" is not before the court.

4. Unless otherwise indicated, all references to "section" and "§" refer to the U.S. Bankruptcy Code, 11 U.S.C. § 101 et seq.

5. Plaintiff does not contend that Redding's October 11, 1991 setoff was in any way improper. However, the court, in its research found *Chang v. Redding Bank of Commerce*, 29 Cal.App.4th 673, 35 Cal.Rptr.2d 64 (1994). The dispute in *Chang* centered on several of the same transactions that are in issue in this case. In *Chang*, the appellate court held that a bank with facts sufficient to put it on inquiry that funds are held by a depositor in trust may not, as against the beneficiary, apply those funds to its own setoff. It remanded stating the plaintiff had demonstrated that there was a triable issue of fact on the matter.

"Insufficiency" is defined in § 553(b)(2) as the amount by which a claim against the debtor exceeds a mutual debt owing to the debtor by the holder of such claim.

## V. Calculating the Insufficiency

■ As the Fifth Circuit Court of Appeals explained, the application of 11 U.S.C. § 553(b) is "strictly mathematical." *Braniff Airways, Inc. v. Exxon Co., U.S.A.*, 814 F.2d 1030, 1040 (5th Cir.1987) (citations omitted). It posits a two point comparison. One point is the "insufficiency" on the date of actual setoff. This is the amount still left owing by the debtor to the creditor after the creditor executes its setoff.

The second comparison point is the insufficiency on the test date or the "test insufficiency". Unlike the actual insufficiency, this is a hypothetical amount. It asks what amount would the debtor still have owed the creditor had the creditor performed a setoff on the test date. To calculate this amount the court must ascertain the **day** on which to perform the hypothetical setoff, the **time** at which it should be invoked, and **the method** by which to calculate the mutual debts of the debtor and creditor.

## A. Calculating the Mutual Debts Outstanding on the Test Day

In the case at bar, the parties agree on the amount Debtor owed to Redding: it remained constant at $499,500 from the 90th day pre-petition to the date of the actual offset. However, the parties disagree sharply on the method and time for calculating the amount Redding owed Debtor (the Debtor's account balance) on the testing date. State law frames these issues.

## (1) California Banking Law

■ While a banker in California has a nonstatutory equitable **right** of setoff against the funds of a general depositor, *Kruger v. Wells Fargo Bank,* 11 Cal.3d 352, 360, 113 Cal.Rptr. 449, 453, 521 P.2d 441, 445 (1974), the **amount** available for setoff is a closely regulated affair. *See, e.g.,* Cal.Fin.Code § 864; Cal.Civ.Proc.Code § 700.140; Cal. Com.Code § 11502; Cal.Com.Code § 4303. Section 4303 of the California Commercial Code explicitly addresses the relative property rights to an account when a bank exercises its right of setoff. Cal.Com.Code § 4303.[6]

To correctly analyze these rights it is important to note at the outset the contingent or provisional nature of an account "balance". "In bank collections as a whole and in the handling of items by an individual bank, items go through a whole series of processes". Cal.Com.Code § 4216 Official Comment 1—1992 Amendment. Thus the "balance" of an account at any one time is comprised of a sum of debit and credit postings, some final, but others tentative and subject to later reversal.[7] In other words, some checks that a bank has debited against a depositor's account as "paid" are only provisionally paid, and if a bank acts in a timely manner it may reverse these debits, dishonor the checks drawn against the account, and recover the funds associated with those instruments.

Naturally, a bank wants to maximize the amount available to it in a deposit account when exercising a setoff against the account. To do so, the bank invokes its power to dishonor provisionally paid items. But § 4303 acts as a limit on this power; it determines when the processing of a check has progressed too far along in the bank collection process to warrant a stop in that

---

**6.** "[O]ne should distinguish between NSF and forged drawer cases on the one hand, and priority conflicts over the account on the other.... The correct analysis for priority cases is to go to 4–303, a provision similar to, but significantly different from 4–215." 2 White and Summers, *Uniform Commercial Code,* § 20–4, (4th ed. West 1995).

**7.** Even determining when a bank "receives" an item is not a simple matter. Section 4108(b) states "an item or deposit of money received on any day after a cutoff hour so fixed or after the close of the banking day may be treated as being received at the opening of the next banking day." The preceding subsection states that "a bank may fix an afternoon hour of 2 p.m. or later as a cutoff hour for handling of money and items and the making of entries on its books." Cal.Com. Code. § 4108.

process and a return of the item. Cal.Com. Code § 4303. *Nautilus Leasing Serv., Inc. v. Crocker Nat. Bank,* 147 Cal.App.3d 1023, 195 Cal.Rptr. 478 (1983); *Lawrence v. Bank America,* 163 Cal.App.3d 431, 209 Cal.Rptr. 541 (1985); *Farmers & Merchants State Bank v. Western Bank,* 841 F.2d 1433 (9th Cir.1987). If any one of the events listed in § 4303 occur before the bank exercises its setoff, the setoff is too late and the funds for that item are beyond its grasp.[8] Cal.Com. Code § 4303.

The Plaintiff concedes that California law allows a bank to dishonor and recall certain items provisionally paid before exercising a setoff. The Plaintiff also concedes that Redding, in actually performing the setoff in the case at bar, acted properly in returning several checks it received the night before to recapture those funds for itself. What Plaintiff takes issue with is how the court should calculate the amount in the Debtor's account available for setoff on the **test date.**

### (2) Calculating the Insufficiency on The Test Date

Specifically, Plaintiff argues the court should simply use Redding's stated "balance" for Debtor's account at the close of business on the test day without any adjustments. In other words, even though Redding could have dishonored certain checks had it exercised the setoff on the test date, and even though a rational bank would have done so, Plaintiff contends that the court should presume Redding would not have so acted or, alternatively, should deny altogether Redding's right to dishonor checks on the test date.

The Plaintiff's approach would have the effect of increasing the "test insufficiency". If it is assumed for purposes of calculating the hypothetical setoff that Redding would not have dishonored any provisionally paid items, then less funds will be available in Debtor's account to offset against the debt owed to Redding. This would aid Plaintiff's cause: by increasing the insufficiency on the test date, it is more likely that Redding will appear to have improved its position by waiting until the actual date of setoff.

To support this view Plaintiff argues that to decide otherwise would allow "the Bank to use its powers over the Debtor's accounts to improve its position vis-a-vis other creditors....", powers that Plaintiff contends are "bookkeeping devices" which defeat the purpose of § 553(b)(1). The Plaintiff claims that "only by using the ending balance [on the test date], after payment of the checks, but before the actual reversal and offset, can the Code prevent the Bank from retroactively controlling the amount of the 'insufficiency'".

The court disagrees. To begin with, the dishonor of provisionally paid items is not a mere bookkeeping device, it is a tenet of state law. Whatever power a bank exercises over a debtor's account emanates from this law and not its unilateral accounting decisions. *See, Barnhill v. Johnson,* 503 U.S. 393, 112 S.Ct. 1386, 118 L.Ed.2d 39 (1992) (for purposes of § 547(b)(4)(A), a state's Uniform Commercial Code determines the rights and duties enjoyed by each party to a check

8. A "setoff exercised by a payor bank ... comes too late ... [if] exercised after the happening of any of the following:
(a) The bank has accepted or certified the item;
(b) The bank has paid the item in cash;
(c) The bank has settled for the item without having a right to revoke the settlement under any of the following: statute, clearinghouse rule, agreement, or reservation thereof;
(d) The cutoff hour (Section [4108]) or the close of the banking day if no cutoff hour is fixed of the day on which the bank received the item;
(e) The bank has become accountable for the amount of the item under subdivision (1)(d) of Section 4213 and Section 4302 dealing with the payor bank's responsibility for late return of items; or

(f) The item has been deposited or received for deposit for credit in an account of a customer with the payor bank."
Cal.Com.Code § 4303 (West 1992).
In adopting the 1962 version of the Uniform Commercial Code, California altered § 4–303. In particular, in subsection (d), California rejected the process-of-posting test in favor of the above quoted language. This language truncated the "midnight rule" for purposes of priority disputes. In 1992, California adopted the revised Uniform Commercial Code. While the new version of § 4303 significantly differs from that quoted above, the changes would not alter the outcome of this case. *See* Cal.Com.Code. § 4303 (West 1996).

transaction); *See also, In re Lee,* 179 B.R. 149, 160 (9th Cir.BAP1995).

Nor does the logic or the language of the statute support the Plaintiff's argument. As stated above, the § 553(b)(1) limitation envisions a two point comparison. The court is instructed to compare the "insufficiency" on the date of the actual offset with the "insufficiency" on the test date. Section 553(b)(2) then defines "insufficiency." Plaintiff would have the court deny Redding its right to reverse provisionally paid items, but only for purposes of calculating the test insufficiency; Plaintiff concedes Redding had this ability when actually invoking its setoff. However nothing indicates that the method of calculating the "insufficiency" on one point, the actual offset date, is somehow to differ from the method of calculating the "insufficiency" on the other point, the test date. If the code intended the court to use two dramatically different methods in its calculations, surely it would have said so.

■ Nor do policy considerations alter this conclusion. Since a creditor generally may effectuate a setoff post-petition (assuming relief from stay is granted) without regard for the limitation of § 553(b), the effect of the subsection is to discourage defensive setoffs in anticipation of a debtor's bankruptcy and to encourage workouts. *In re Chamblin,* 107 B.R. 122, 123 (Bankr.N.D.Tex. 1989); 1 Epstein, Nickles, & White, *Bankruptcy,* § 6–41, (2d ed. West 1992). Thus § 553(b) tests only for whether any improvement occurred during the 90 day lookback period. This requires the court to accurately measure the creditor's position at the outset of the 90 day period and to compare it to the creditor's position on the date of actual offset. Turning a blind eye to the very statute that delineates the property rights to a bank account can only diminish the accuracy of this measurement. While this might yield a windfall to the estate, that windfall is not a policy found in § 553.

Consequently, the only rational approach for a court undertaking the hypothetical calculation called for by § 553(b) is to presume a creditor would act consistently with its own best interest. Thus the court holds that, for purposes of calculating the test insufficiency, it will presume that Redding would have used any of the rights available to it under state law to reverse provisionally paid items before exercising the setoff had it exercised the setoff on the test date.

### B. The Testing Time

The parties also argue about the time at which the court should calculate the insufficiency on the test date. Plaintiff argues the debtor's **unadjusted provisional account balance at the close of business on the test date** is appropriate. As a practical matter, the holding above, abiding by a state law determination of property rights in the account balance, resolves the matter against the plaintiff; the plaintiff cannot win no matter what time of day is chosen on the particular facts of this case. But, as a technical matter, the court cannot calculate the insufficiency without knowing at what time on the test date to calculate it. And the court believes it is necessary and helpful to address the parties' arguments on this point.

#### (1) The 2,160 Hour Approach

Very little case law exists on this subject. The parties cite to only one case directly on point and the court has discovered no other. In *In re Craddock–Terry Shoe Corp.,* 91 B.R. 392 (Bankr.W.D.Va.1988), the court interpreted the 90–day lookback period in § 553(b) as meaning exactly 2,160 hours prior to the filing of the bankruptcy petition. It reasoned that such an interpretation accords with the plain meaning of the statute, provides a clear and easy to apply rule, and takes into consideration the time of day when time of day would make a difference and can be proven. While not unmindful of the concerns that led the *Craddock–Terry* court to its choice, this court does not believe such an approach is appropriate in all applications of § 553(b).

#### (2) The Equitable Underpinnings of Section 553 Setoffs

As an initial matter, it is worth noting that § 553(b) only mentions **days** and not **hours.** Limitations periods generally do not expire at a particular hour but rather at the close of

business. Therefore, the court disagrees with the "plain meaning" as expounded by the *Craddock–Terry* court. Additionally, it is not at all clear that such an hours and minutes rule would be easy to apply in practice. The parties and the court will be performing these calculation months, perhaps years, after the transactions occur. Also, it bears repeating that the test insufficiency asks how the creditor would have fared had it invoked its right of setoff on the test date. The time of day on which the debtor filed its petition lacks any relevance to this task.

■ More significantly, the hours and minutes approach acts arbitrarily despite the equitable foundation of the right of setoff. When invoked in the context of a bankruptcy case, it is well settled that the right of setoff is subject to general principles of equity. *In re Cascade Roads, Inc.* 34 F.3d 756, 763 (9th Cir.1994); *United States·v. Norton,* 717 F.2d 767, 772 (3d Cir.1983); *In re Harmon,* 188 B.R. 421, 424 (9th Cir. BAP 1995). Equity calls for a more discerning instrument to gauge what is already a hypothetical transaction.

■ With this principle in mind, the court prefers to adopt an approach which comports with standard banking practices and the Uniform Commercial Code. The Uniform Commercial Code speaks in terms of a "banking day". *See* Cal.Com.Code § 4104. And, generally, banks use a banking day as their unit of measure, not hours or minutes, when calculating the interest due for both loans and deposits. Consequently, the hypothetical setoff under § 553(b) should be performed at the close of the banking day on the test setoff date or at the bank's "cutoff hour" for the banking day if one is so established. Thus, the balance in the debtor's bank account (the debt owed by the bank to the debtor) is initially fixed as of the cutoff hour or the close of the banking day. It is then adjusted, as discussed in the preceding section, for those items subject to reversal at the time of the hypothetical setoff. Like-

wise, the balance of the mutual debt owed to the bank by the debtor is determined at the end of the business day by calculating and adding the interest (which is computed on a daily basis) to the previous balance.

## C. The Testing Date and the Test For Improvement

The precise wording of § 553(b) gives rise to some confusion over what constitutes the testing setoff date. However, the legislative history best explains the setoff date by construing § 553(b) in the reverse.[9] That is, the comparison day is the 90th day preceding the bankruptcy filing if an insufficiency exists on that day, or the first date during the 90 days preceding the bankruptcy filing ("90 day lookback period") when an insufficiency does exist.

This leads to a convenient algorithm. To determine whether a setoff improved a creditor's position a court should proceed as follows:

(1) Compare the amount owed to the creditor with the mutual debt owed by the creditor to the debtor on the 90th day before the bankruptcy filing. These amounts should be calculated at the time and using the method as discussed above. If the amount owed to the creditor exceeds the amount owed to the debtor, there is an insufficiency and the 90th day before bankruptcy is the hypothetical setoff date. If no insufficiency exists on the 90th day, then a comparison of the balances of the mutual debts must be made on each subsequent day until an insufficiency does exist, in which event that day becomes the hypothetical setoff day. If no insufficiency is found before the day of the actual setoff, the setoff is not preferential.

(2) If an insufficiency is found before the day of the creditor's offset, compare that insufficiency with the insufficiency, if any, that remained after the offset taken by the creditor.

(3) Only if the insufficiency on the hypothetical offset date is greater than the insufficiency on the day of the actual offset has the

---

9. The test setoff date is "the **earlier** of the first date of either the 90 day period or the first date during such 90 day period on which there was

an insufficiency." H.Rep. No. 484, 101st Cong., 2d Sess. (1990), p. 5 (emphasis added).

creditor improved its position and thus had a preferential offset. The trustee is entitled to recover the difference between the two amounts.

## VI. Application Of The Improvement In Position Test

Applying the first step of the improvement in position test to the case at hand, the court notes that the first date that there was an insufficiency was the 90th day. Thus, the test setoff date is the 90th day prior to the filing of the bankruptcy petition, or October 10, 1991. Applying the above approach to determine the mutual debt owed to Debtor, the court finds that, according to bank records, the balance at the close of business on the test setoff date was $228,252.11. The court will add to that balance the items reversible under state law. The Plaintiff concedes that Redding could have reversed checks received after the close of business on the prior banking day had it exercised a setoff on the 90th day. These checks totaled $37,876.10.[10] Bank records also show that checks received during the 90th day but neither paid for over the counter nor finally settled on that day totalled $174,206.69.[11] Additionally, we note that Redding processed two transfers on the testing date in the total amount of $46,000. However, Redding has not suggested that these transfers be reversed.[12] Adding the reversed checks to the initial closing balance, the court finds that the debt owed to the Debtor on the test setoff date was $440,334.90 ($37,876.10 + $174,206.69 + $228,252.11). As for the mutual debt owing to Redding, the parties agree that the amount of debt owed under the Promissory Note equaled $499,500.00 on the test date.

The insufficiency on the test setoff date is then computed by subtracting the amount owed to Redding under the Promissory Note on the test setoff date from the amount owed to Debtor on that date. This results in a "test insufficiency" of $59,165.10 ($440,334.90 minus $499,500.00).

Next, the court must calculate the insufficiency at the time of the actual setoff, which occurred on October 11, 1991. The parties do not dispute this amount. At the time of setoff, the balance in Debtor's bank account, after Redding's adjustments, was $402,458.80 and the amount Debtor owed Redding under the Promissory Note was $499,500.00. Therefore, the insufficiency at the time of the actual setoff equaled $97,041.20.

Finally, the court must compare the test insufficiency and the actual insufficiency. In the instant case, the actual insufficiency of $97,041.20 exceeds the test insufficiency of $59,165.10, meaning a greater shortfall existed after Redding's actual setoff against Debtor's account than would have existed on the test day.[13] Redding did not improve its position and Plaintiff is not entitled to a recovery.

## VII. CONCLUSION

Since the insufficiency on the 90th day is not greater than the actual insufficiency, the setoff is proper. Thus, Plaintiff is not permitted to recover any portion of the setoff. The court will therefore grant the motion for

---

10. Due to Plaintiff's concession we need not determine whether California's pre–1992 version of § 4303(d) precludes the reversal of any of these checks that might have been received before the close of business or the bank's cutoff hour on October 9th.

11. Note that this amount does not include the $5,000.00 check that was immediately paid over the counter. It also does not include the check for $52.00 because the court is uncertain as to whether this check was immediately paid over the counter. The court observes that Defendant elected not to reverse this check when it performed the actual setoff on October 11, 1991. Since there is some ambiguity, the court will view the facts in the light most favorable to Plaintiff. Thus, the court assumes that the check

was presented for immediate payment over the counter and the transaction will not be reversed for purposes of determining the insufficiency on the 90th day.

12. In any event, the test insufficiency after reversal of the checks alone is sufficient for Redding to prevail without reversing the $46,000 in transfers.

13. One might note that the difference between the actual insufficiency and the test insufficiency of $37,876.10 matches the dollar amount of checks posted on the day preceding the test setoff date. This results from an unusual circumstance of this case: the day of actual setoff is the very next day following the test setoff day.

summary judgment in favor of Redding. The foregoing constitute this court's findings of fact and conclusions of law. An appropriate order will issue.