In re Michael Patrick MURPHY, Debtor.

Steven N. MOTTAZ, Plaintiff,

v.

ST. LOUIS POST–DISPATCH PULITZER PUBLISHING CO., Defendant.

Bankruptcy No. 95–50177.
Adversary No. 95–5119.

United States Bankruptcy Court,
S.D. Illinois.

Jan. 14, 1997.

Steven N. Mottaz, Alton, IL, Trustee/plaintiff.

Daniel C. Nester, St. Louis, MO, for St. Louis Post–Dispatch.

## OPINION

LARRY L. LESSEN, Bankruptcy Judge.

The issue before the Court is whether the Trustee may recover funds withheld by the St. Louis Post–Dispatch when the newspaper forced an assignment of the Debtor's home delivery route back to the newspaper.

The material facts are not in dispute. The Debtor, Michael Murphy, entered into a home delivery service agreement with the St. Louis Post–Dispatch on August 31, 1990. Pursuant to this agreement, the Debtor agreed to deliver the daily and Sunday St. Louis Post–Dispatch to the newspaper's home delivery customers in a specified territory as a self-employed independent contractor. In return, the Post–Dispatch agreed to pay the Debtor a certain rate per paper, depending on the day of the week, the size of the paper, and whether the Debtor was required to insert parts into the paper.

Home delivery routes are normally purchased and sold by carriers. The home delivery service agreement provides that the carrier has the right to sell and assign the route to anyone for whatever compensation may be agreed upon by the carrier and the assignee. It is unusual for the Post–Dispatch to get involved in the sale of a route. However, where the carrier defaults on any of his obligations under the agreement, the Post–Dispatch may require the carrier to sell or assign the route. If the carrier fails to find a buyer for the route, the Post–Dispatch is obligated to buy back the route at its fair market value. The fair market value of the route is determined by a formula based on the number of customers on the route.

In this case, the Debtor was in default of his obligations under the service agreement almost as long as he was in business. On June 3, 1993, the St. Louis Post–Dispatch sent the Debtor a letter informing him that he was delinquent in the amount $27,787.97 and that the Post–Dispatch intended to require the assignment of the route. The Debtor responded by offering a payment schedule, and the Post–Dispatch accepted the Debtor's payment schedule in a letter dated June 25, 1993. Unfortunately, the Debtor failed to comply with the payment schedule and only reduced the debt to the Post–Dis-

patch by $394.71 over the next 14 months. Accordingly, in a letter dated August 1, 1994, the Post–Dispatch once again gave the Debtor notice of its intention to require the assignment of the route. When the Debtor failed to obtain a prospective purchaser within the 90 days provided by the home delivery service agreement, the Post–Dispatch offered to purchase the route for $75,000.00, less any amounts owed to the Post–Dispatch, in a letter dated November 1, 1994. The Debtor accepted this offer in a letter dated December 7, 1994, wherein he acknowledged that any indebtedness he owed to the Post–Dispatch would be deducted from the $75,000.00. The Debtor directed that the check should be made payable to him and his father, Thomas Murphy. The Debtor and a representative of the Post–Dispatch signed a document on December 7, 1994, which set forth the terms of the sale.

On December 6, 1994, the 90th day prior to filing, the Debtor owed the Post–Dispatch $36,363.44. This debt rose to $37,145.66 by December 10, 1994. The fair market value of the paper route at all relevant times was $75,000.00 based on the represented number of customers.

On December 19, 1994, the Post–Dispatch executed a check in the amount of $40,731.18 payable to the Debtor and his parents. The Debtor's account with the Post–Dispatch was credited with the purchase price of $75,-000.00. According to a statement dated December 11, 1994, the Post–Dispatch took a setoff against the sale proceeds of $34,268.82.

On January 13, 1995, the Post–Dispatch assigned the route to a third party for the sum of $75,000.00. The Post–Dispatch subsequently discovered that the Debtor had misrepresented the number of customers and the scope of the distribution under his route agreement. The Post–Dispatch later concluded that it had paid $12,000.00 too much for the assignment of the route, and the Post–Dispatch credited the purchaser of the assignment of the route with the sum of $12,000.00 on May 12, 1995.

The Debtor filed his petition pursuant to Chapter 7 of the Bankruptcy Code on March 6, 1995. The Plaintiff, Steven Mottaz, was

appointed to serve as the Trustee in this case.

■ The Trustee has filed a complaint to recover the funds set off by the Post–Dispatch. The Trustee argues that the transaction was an avoidable preference under 11 U.S.C. § 547(b) or an improper setoff under 11 U.S.C. §§ 553(a)(3) and (b). Because a setoff is excluded from the Bankruptcy Code's definition of a "transfer", a setoff is not subject to being set aside as a preferential transfer. *In re Massachusetts Gas & Electric Light Supply Co., Inc.,* 200 B.R. 471, 473 (Bankr.D.Mass.1996). Therefore, the Court must first determine whether the transaction constituted a setoff.

■ The term "setoff" is not defined in the Bankruptcy Code. Section 553 of the Bankruptcy Code governs the exercise of setoffs between debtors and creditors in a bankruptcy case. However, it does not create an independent right of setoff. Instead, it incorporates in bankruptcy a common-law right of setoff with a few additional restrictions. *Darr v. Muratore,* 8 F.3d 854, 860 (1st Cir.1993). In general, the right of setoff allows parties that owe mutual debts to each other to assert the amounts owed on these debts, subtract one from the other, and then pay only the balance. *Id.* at 860. As the Supreme Court recently observed, setoff avoids the "absurdity of making A pay B when B owed A." *Citizens Bank of Maryland v. Strumpf,* —— U.S. ——, ——, 116 S.Ct. 286, 289, 133 L.Ed.2d 258 (1995), quoting *Studley v. Boylston National Bank,* 229 U.S. 523, 528, 33 S.Ct. 806, 808, 57 L.Ed. 1313 (1913). Mutuality requires that something be "owed" by both sides. *In re Photo Mechanical Services, Inc.,* 179 B.R. 604, 615 (Bankr.D.Minn.1995). In order to be mutual, debts must be in the same right and between the same parties. In addition, the parties must stand in the same capacity. *In re County of Orange,* 183 B.R. 609, 616 (Bankr. C.D.Cal.1995).

In this case, the relevant debts arose prepetition. The Debtor's obligations to the Post–Dispatch arose when he failed to make timely payments to the Post–Dispatch pursuant to the home delivery service agreement. The Post–Dispatch's obligation to the Debtor arose when the Post–Dispatch forced the assignment of the delivery route, and the Debtor was unable to procure a buyer for the route on his own during the 90 days allowed by the agreement. Thus, both debts are in the same right. The debts are also between the same parties; the Debtor owed the Post–Dispatch for his deficiencies under the home delivery service agreement and the Post–Dispatch was obligated to pay the Debtor the fair market value of his route. Finally, the parties are standing in the same capacity; neither debt arose in any sort of trust, representative or fiduciary capacity. Accordingly, the Court concludes that there was a setoff.

■ As noted above, 11 U.S.C. § 553 governs the exercise of setoffs in bankruptcy. This section places certain limits on the exercise of setoffs against a debtor who later files bankruptcy. The limitations at issue in this proceeding can be found at § 553(a)(3) and (b):

(a) Except as otherwise provided in this section and in sections 362 and 363 of this title, this title does not affect any right of a creditor to offset a mutual debt owing by such creditor to the debtor that arose before the commencement of the case under this title against a claim of such creditor against the debtor that arose before the commencement of the case, except to the extent that—

\* \* \* \* \* \*

(3) the debt owed to the debtor by such creditor was incurred by such creditor—

(A) after 90 days before the date of the filing of the petition;

(B) while the debtor was insolvent; and

(C) for the purpose of obtaining a right of setoff against the debtor.

(b)(1) Except with respect to a setoff of a kind described in section 362(b)(6), 362(b)(7), 362(b)(14), 365(h), 546(h), or 365(i)(2) of this title, if a creditor offsets a mutual debt owing to the debtor against a claim against the debtor on or within 90 days before the date of the filing of the petition, then the trustee

may recover from such creditor the amount so offset to the extent that any insufficiency on the date of such setoff is less than the insufficiency on the later of—

    (A) 90 days before the date of the filing of the petition; and

    (B) the first date during the 90 days immediately preceding the date of the filing of the petition on which there is an insufficiency.

(2) In this subsection, "insufficiency" means amount, if any, by which a claim against the debtor exceeds a mutual debt owing to the debtor by the holder of such claim.

The Trustee argues that the setoff is avoidable pursuant to § 523(a)(3) because the debt was incurred within 90 days of the filing of the bankruptcy petition, the Debtor was insolvent, and the debt was created for the purpose of obtaining a right of setoff against the Debtor. The Trustee asserts that the debt was incurred on December 7, 1994, when the sale agreement was executed. This was the 89th day preceding the filing of the bankruptcy petition. The Court disagrees with the Trustee's analysis. Pursuant to the home delivery service agreement, the Post–Dispatch was obligated to pay the Debtor the fair market value of the route when he failed to procure a buyer for the route within 90 days of the August 1, 1994, letter from the Post–Dispatch requiring the assignment of the route. This 90 day period expired on October 30, 1994. Although the price was not agreed upon at this time, it was easily discernable by using a set formula based on the number of customers. More important, a liability need not be fixed and liquidated before it is a debt. *In re Rosteck,* 899 F.2d 694 (7th Cir.1990). The Post–Dispatch's obligation to the Debtor arose pursuant to the home delivery service agreement well before the 90 day period of § 523(a)(3), and, therefore, the setoff may not be avoided pursuant to this provision.

Section 523(b) sets forth what is commonly referred to as the "improvement in position test". Under this test, the trustee may recover all or part of the amount which was offset if (1) the setoff occurred within ninety days of the filing of the bankruptcy petition and (2) the creditor "improved its position" as a result of the setoff. In order to determine whether a creditor has improved its position, it is necessary to determine the "insufficiency" both when the setoff occurred and 90 days prior to the filing date, or the first date during the 90 days when an insufficiency existed. "Insufficiency" is defined by § 553(b)(2) as the amount by which a claim against the debtor exceeds a mutual debt owing to the debtor by the holder of such claim. If the setoff occurs within the 90 day prepetition period and it results in a smaller insufficiency than existed on the test date, than the creditor has improved its position. The trustee may then recover the setoff amount to the extent that it improved the creditor's position. In this way, § 553(b) prevents a creditor from using a setoff to put itself in a better position than it was in prior to the 90 day prepetition period, and creditors are therefore discouraged from using setoffs to defeat the rights of other creditors.

To determine whether a setoff improved a creditor's position, *In re Paragon Development Enterprises, Inc.* 201 B.R. 254, 261–62 (Bankr.E.D.Cal.1996) offers this three-step process:

    (1) Compare the amount owed to the creditor with the mutual debt owed by the creditor to the debtor on the 90th day before the bankruptcy filing ... If the amount owed to the creditor exceeds the amount owed to the debtor, there is an insufficiency and the 90th day before bankruptcy is the hypothetical setoff date. If no insufficiency exists on the 90th day, then a comparison of the balances of the mutual debts must be made on each subsequent day until an insufficiency does exist, in which event that day becomes the hypothetical setoff day. If no insufficiency is found before the day of the actual setoff, the setoff is not preferential.

    (2) If an insufficiency is found before the day of the creditor's offset, compare that insufficiency with the insufficiency, if any, that remained after the offset taken by the creditor.

(3) Only if the insufficiency on the hypothetical offset date is greater than the insufficiency on the day of the actual offset has the creditor improved its position and thus had a preferential offset. The trustee is entitled to recover the difference between the two accounts.

Applying the first step of the improvement in position test to the case at bar, the Court finds that on the 90th day preceding the filing of the bankruptcy petition the Debtor owed the Post–Dispatch $36,363.44. On this date, the Post–Dispatch owed the Debtor $75,000.00 for the fair market value of the route. The insufficiency on the 90th day is then computed by subtracting the amount owed to the Post–Dispatch from the amount owed to the Debtor on that date. This results in a "test insufficiency" of $38,636.56.

Next, the Court must calculate the insufficiency at the time of the actual setoff, which occurred on December 9, 1994. At the time of the setoff, the Post–Dispatch owed the Debtor $75,000.00 and the Debtor owed the Post–Dispatch $34,268.82. Therefore, the insufficiency at the time of the actual setoff equaled $40,731.18.

Finally, the Court must compare the test insufficiency and the actual insufficiency. In this case, the actual insufficiency of $40,-731.18 exceeds the test insufficiency of $38,-636.56, meaning a greater shortfall existed after the Post–Dispatch's actual setoff against the Debtor than would have existed on the test day. Therefore, the Post–Dispatch did not improve its position and the Trustee is not entitled to a recovery.

For the foregoing reasons, the Trustee's Complaint to Avoid Transfer is denied.

This Opinion is to serve as Findings of Fact and Conclusions of Law pursuant to Rule 7052 of the Rules of Bankruptcy Procedure.

See written Order.