**In re JENKINS ENTERPRISES, INC., Debtor.**

**Mark T. Dunn, Trustee, Plaintiff,**

**v.**

**First National Bank of Decatur, Defendant.**

**Bankruptcy No. 01–74711.
Adversary No. 02–7037.**

United States Bankruptcy Court, C.D. Illinois.

March 11, 2003.

Mark T. Dunn, Bloomington, IL, trustee.

U.S. Trustee, Peoria.

Thom Moss, Decatur, IL, for First National Bank of Decatur.

**OPINION**

LARRY L. LESSEN, Bankruptcy Judge.

The issue before the Court is whether the Chapter 7 Trustee may recover a prepetition setoff as preferential pursuant to 11 U.S.C. § 553(b). In order to resolve this issue, the Court must apply the "improvement in position test".

The parties have stipulated to the following facts: The Debtor, Jenkins Enterprises, Inc., filed a petition pursuant to Chapter 7 of the Bankruptcy Code on December 5, 2001. Mark T. Dunn is the duly-appointed and qualified Trustee of the estate of the Debtor.

The Debtor operated several Schlotzsky's restaurants in Decatur, Illinois. The Debtor maintained a business checking account with the Defendant, First National Bank of Decatur. The Debtor's business was cash intensive and the Debtor, for security reasons, made cash deposits to its business checking account about two times a day. The Debtor would bring cash deposits to the Bank's drive-up window and present them to the teller. The cash deposits would then be counted by the teller to confirm the amount of the deposit. Thereafter, the teller would provide the person making the deposit for the Debtor with a deposit slip containing the reference numbers for the deposit and the amount of each respective deposit.

After providing the Debtor with a deposit slip, the Bank teller would add a copy of the cash deposit ticket to that teller's daily work (i.e., the teller's record of receipts and disbursements). At various times during the day, the teller would submit the daily items for interim processing. At the end of the teller's shift, the teller was expected to balance the teller's drawer and submit any remaining items for processing. During the banking day, when transactions were presented to the teller, the transactions were simultaneously memo-posted to the Debtor's account.

In addition to the foregoing transactions, the Bank, pursuant to its account agreement with the Debtor, would make other deductions or withdrawals from the Debtor's account for various charges imposed by the Bank.

The banking day began at 8:00 a.m. and ended at 6:00 p.m. All transactions up to the end of the banking day were proofed after the close of business at 6:00 p.m. and "hard-posted" to the Debtor's account. All deposits received before 6:00 p.m. on a business day are considered to have been deposited on that business day. All depos-

its received after 6:00 p.m. on a business day are considered to have been deposited on the next following business day. All debits and credits processed before 6:00 p.m. on a business day are considered to have been made on that business day. If there are any debits or credits that have not been processed before 11:59:59 p.m. on a business day, then they are considered to have been debited or credited on the next business day.

Transactions to the Debtor's account up to the end of the banking day were processed and hard-posted after 6:00 p.m. in the following order:

a. Deposits to the Debtor's account, including paper and electronic transfers; then

b. Any internal debit memo of the Bank; then

c. Any other debits to the Debtor's account, including paper and electronic debits.

September 6, 2001, was ninety (90) days prior to the date the Debtor filed its petition. The following illustrates the activity in the Debtor's account on September 6, 2001:

| | |
|---|---|
| $ 9,131.83 | (9/5/01—11:59 p.m. closing balance and 9/6/01 opening balance) |
| $ 131.77 | (Electronic deposits) |
| $ 9,263.60 | (Balance after electronic deposits) |
| $ 2,500.00 | (Deposits) |
| $ 994.47 | (Other deposits) |
| $12,758.07 | (9/6/01 hard-posted balance after all credits at 6:00 p.m.) |
| ($17,758.07) | (9/6/01 debits posted after 6:00 p.m. but before 11:59 p.m.) |
| ($ 4,414.40) | (9/6/01—11:59 p.m. closing balance and 9/7/01 beginning balance) |

The Bank exercised its right of setoff on October 10, 2001. The Bank accomplished the setoff by submitting an internal debit memo during the banking day for processing and hard-posting after all credits have been posted after 6:00 p.m. that day. The amount of the setoff was $14,141.04.

The following illustrates the activity in the Debtor's account on October 10, 2001:

| | |
|---|---|
| $ 8,956.90 | (10/9/01—11:59 p.m. closing balance and 10/10/01 beginning balance) |
| $ 150.81 | (Electronic deposits) |
| $ 9,107.71 | (Balance after electronic deposits) |
| $ 5,033.33 | (Deposits) |
| $14,141.04 | (10/10/01 hard-posted balance after all credits at 6:00 p.m.) |
| ($14,141.04) | (Bank then sets off this amount) |
| ($ 3,501.05) | (10/10/01 other debits posted after 6:00 p.m. but before 11:59 p.m.) |
| ($ 3,501.05) | (10/10/01—11:59 p.m. closing balance and 10/11/01 beginning balance) |

The Debtor was indebted to the Bank on a promissory note in the amount of $87,208.00 on both September 6, 2001, and October 10, 2001. In addition, the Debtor was indebted to the Bank in the amount of $80,000 on a line of credit on both September 6 and October 10. The Debtor owed the Bank $1,703.02 for interest on the line of credit on September 6; the interest obligation was up to $2,372.00 on October 10. The parties agree that an insufficiency existed on both September 6 and October 10.

The Trustee's complaint is based on the "improvement of position" test made available to Trustees under 11 U.S.C. § 553(b). 11 U.S.C. § 553(b) and (c) provide as follows:

(b)(1) Except with respect to a setoff of a kind described in section 362(b)(6), 362(b)(7), 362(b)(14), 365(h), 546(h), or 365(i)(2) of this title, if a credit offsets a mutual debt owing to the debtor against a claim against the debtor on or within 90 days before the date of the filing of the petition, then the trustee may recover from such creditor the amount so offset to the extent that any insufficiency on the date of the such setoff is less than the insufficiency on the later of—

(A) 90 days before the date of the filing of the petition; and

(B) the first date during the 90 days immediately preceding the date

of the filing of the petition on which there is an insufficiency.

(2) In this subsection, "insufficiency" means amount, if any, by which a claim against the debtor exceeds a mutual debt owing to the debtor by the holder of such claim.

(c) For the purposes of this section, the debtor is presumed to have been insolvent on and during the 90 days immediately preceding the date of the filing of the petition.

■ In order to determine whether a setoff improved a creditor's position, the Court follows this three-step process:

(1) Compare the amount owed to the creditor with the mutual debt owed by the creditor to the debtor on the 90th day before the bankruptcy filing.... If the amount owed to the creditor exceeds the amount owed to the debtor, there is an insufficiency and the 90th day before bankruptcy is the hypothetical setoff date. If no insufficiency exists on the 90th day, then a comparison of the balances of the mutual debts must be made on each subsequent day until an insufficiency does exist, in which event that day becomes the hypothetical setoff day. If no insufficiency is found before the day of the actual setoff, the setoff is not preferential.

(2) If an insufficiency is found before the day of the creditor's offset, compare that insufficiency with the insufficiency, if any, that remained after the offset taken by the creditor.

(3) Only if the insufficiency on the hypothetical offset date is greater than the insufficiency on the day of the actual offset has the creditor improved its position and thus had a preferential offset. The trustee is entitled to recover the difference between the two accounts.

*In re Murphy,* 203 B.R. 972, 976–77 (Bankr.S.D.Ill.1997), *citing In re Paragon*

*Development Enterprises, Inc.,* 201 B.R. 254, 261–62 (Bankr.E.D.Cal.1996).

The parties agree that an insufficiency of $155,438.96 existed on the setoff date of October 10, 2001. This number is calculated by subtracting the amount of the setoff ($14,141.04) from the loan balance ($169,-580.00).

The determinative issue in this proceeding is the amount of the insufficiency on the "test date" of September 6, 2001. The parties agree that the Debtor was indebted to the Bank on this date in the amount of $168,911.02 but they cannot agree on the amount that the Bank owed to the Debtor. The question is one of timing: The Trustee uses ($4,414.40), the stipulated amount in the Debtor's account at 11:59 p.m. on September 6, 2001; the Bank uses $12,758.07, the hard-posted balance after all credits at 6:00 p.m. on September 6, 2001.

The Trustee argues that the close of the "business day" is an "artificial time", and he notes that the Bankruptcy Code does not use the term "business day". The Trustee suggests that "[s]earching for some other artificial times of day or such things as 'business days' only leads to inconsistent results controlled by accidental factors." The Trustee recognizes that "a bank will set off when it is most advantageous to the bank and conversely most damaging to the debtor." However, the Trustee argues that the purpose of § 553(b) is effectuated not by looking at the beginning balance or a balance at the end of the "business day", but rather by using the last balance on the ninetieth day before the Chapter 7 was filed.

The Bank argues that the Trustee's methodology does not reflect what would have really happened if the setoff had actually occurred on September 6 instead of October 10. The Bank argues that a setoff on September 6 would have occurred just

like the actual setoff on October 10, i.e. by submitting an internal memo during the day for processing and hard-posting after all credits had been posted after 6:00 p.m. that day. Therefore, the Bank argues that the 6:00 p.m. balance should be used instead of the 11:59 p.m. balance advocated by the Trustee.

Both parties cite *In re Paragon Development Enterprises, Inc., supra,* in support of their positions. *Paragon* specifically addressed the calculation of the insufficiency on the test date: "To calculate this amount the court must ascertain the *day* on which to perform the hypothetical setoff, the *time* at which it should be invoked, and *the method* by which to calculate the mutual debts of the debtor and creditor." *Id.* at 258 (emphasis in original). The *Paragon* trustee, like the Trustee in this case, argued that the court should simply use the bank's stated balance at the close of business on the test day without any adjustments.

> In other words, even though... [the bank] could have dishonored certain checks had it exercised the setoff on the test date, and even though a rational bank would have done so, the Plaintiff contends that the court should presume... [the bank] would not have so acted or, alternatively, should deny altogether... [the bank's] right to dishonor checks on the test date.

*Id.* at 259. The *Paragon* court rejected this argument. The court noted that the dishonor of checks was not a "mere bookkeeping device", but rather a "tenet of state law". *Id.* at 259. The court determined that if the bank could reverse provisionally paid items when it actually invoked its right to setoff, then it should also be allowed to do so for calculating the test insufficiency:

> [N]othing indicates that the method of calculating the "insufficiency" on one point, the actual offset date, is somehow to differ from the method of calculating the "insufficiency" on the other point, the test date. If the code intended the court to use two dramatically different methods in its calculations, surely it would have said so.

*Id.* at 260.

Therefore, the court determined that:

> ... the only rational approach for a court undertaking the hypothetical calculation called for by § 553(b) is to presume a creditor would act consistently with its own best interest. Thus the court holds that, for purposes of calculating the test insufficiency, it will presume that [the bank] would have used any of the rights available to it under state law to reverse provisionally paid items before exercising the setoff had it exercised the setoff on the test date.

*Id.* at 260. The court further determined the time at which the court should calculate the insufficiency on the test date as follows:

> [T]he hypothetical setoff under § 553(b) should be performed at the close of the banking day on the test setoff date or at the bank's "cutoff hour" for the banking day if one is so established. Thus, the balance in the debtor's bank account (the debt owed by the bank to the debtor) is initially fixed as of the cutoff hour or the close of the banking day. It is then adjusted, as discussed in the preceding section, for those items subject to reversal at the time of the hypothetical setoff. Likewise, the balance of the mutual debt owed to the bank by the debtor is determined at the end of the business day by calculating and adding the

interest (which is computed on a daily basis) to the previous balance.

*Id.* at 261.

The Court believes that the *Paragon* analysis is well-reasoned and will follow it in this proceeding. On October 10, 2001, the Bank set off $14,141.04, which represented the hard-posted balance after 6:00 p.m. on that day. The debit items of $3,501.05 on October 10, 2001, were returned. On September 6, 2001, the hard-posted balance after 6:00 p.m. was $12,758.07. This is the amount that the Bank could and would have set off on that date; the $17,172.47 of other debits would have been returned.

Accordingly, the Court finds that an insufficiency of $156,152.95 existed on the test date of September 6, 2001. This number is calculated by subtracting the amount of the hypothetical setoff ($12,758.07) from the loan balance ($168,911.02).

Comparing the insufficiency on the test date of $156,152.95 to the insufficiency on the actual setoff date of $155,438.96, the Court finds that the Bank improved its position by $713.99. This is the amount that the Trustee is entitled to recover.

For the foregoing reasons, the Trustee is entitled to recover $713.99 from the Bank.

This Opinion is to serve as Findings of Fact and Conclusions of Law pursuant to Rule 7052 of the Rules of Bankruptcy Procedure.